## THOMAS et al. v. DISTRICT OF COLUMBIA.

### No. 6880.

United States Court of Appeals for the District of Columbia.

Decided April 19, 1937.

Frederick A. Ballard and Samuel Levine, both of Washington, D. C., for plaintiffs in error.

Elwood H. Seal, Vernon E. West, and James W. Lauderdale, all of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

By separate informations filed in the Police Court of the District of Columbia it was charged that the plaintiffs in error on June 27, 1936, "in the District of Columbia aforesaid, and on Georgia Avenue, north west, did then and there throw, push, cast, deposit, drop, scatter, distribute and leave certain handbills, paper, circulars, on said street, and in a place where from the same is [were] likely to be taken up by the wind and scattered in the street contrary to and in violation of the Police Regulations in such case made and provided, and constituting a law of the District of Columbia." The police regulation in question provides as follows:

"No paper, handbills, dodgers, cards, circulars, or advertising matter of any kind or samples of merchandise shall be thrown, pushed, cast, deposited, dropped, scattered, distributed, or left in or upon any of the places designated in section 1 of this article, or in or upon or from any vehicle in any such places. Nor shall any such be thrown, pushed, cast, deposited, dropped, scattered, distributed, or left in or upon the parking or doorsteps of any premises in the District of Columbia, or within the building line, vestibule, or yard of any premises, if likely to be taken up by the wind and scattered in the streets, or in or upon any of the places mentioned in said section 1: *Provided,* That this regulation shall not prevent the delivery of newspapers and addressed envelops within the building line of any premises within the said District." [Police Regulations of the District of Columbia, Art. III, Sec. 8]

The "places designated in section 1" referred to are as follows: "any street, avenue, alley, highway, footway, sidewalk, parking, or other public space in the District of Columbia." Police Regulations of the District, of Columbia, Art. III, Sec. 1. Section 8 of Article III of the Police Regulations was promulgated by the Commissioners of the District of Columbia under D.C.Code (1929) tit. 20, § 32; 24 Stat. 368, § 1, authorizing the Commissioners:

"to make, modify, and enforce usual and reasonable police regulations in and for said District as follows:

* * *

"Eighth. To prohibit the deposit upon the streets or sidewalks of fruit, or any part thereof, or other substance or articles that might litter the same, or cause injury to or impede pedestrians."

Although the plaintiffs in error were separately charged, they were jointly tried. At the trial evidence was introduced on the part of the District of Columbia through a police officer who, according to the bill of exceptions, testified as follows:

". . . the defendants, on the evening of June 27, 1936, were seen by him to hand to various persons certain handbills on the sidewalk in front of the Griffith's Stadium, located at 7th Street and Florida Ave., northwest. The witness approached the defendants and informed them that they could not hand out these handbills; that the defendants moved on to the northeast corner of 7th Street and Florida Avenue northwest and continued to hand to people the leaflets or handbills; that he then approached the defendants and placed them under arrest, taking from them all of the handbills. The witness then exhibited said handbills to the Court. [The handbills were issued by the Communist Party of Washington, D. C., and contained an appeal for support of an outlined program. The matter contained in them is printed in the margin.[1]]

"The witness did not testify that he saw the defendants or any persons to

---

[1] "Fascism or Democracy?

"The peace, welfare and liberty of the American people are in danger! The combination of the Landon-Hearst-Liberty League ticket is a conspiracy to deprive the American people of their inalienable rights guaranteed under our Constitution. The Republican Party, if elected, will deliver the American people to the mercies of the Wall Street monopolists and thus carry our country a long way on the road to fascism and war.

"For over a year the Liberty League, with the able support of the Supreme Court, has attacked every piece of social legislation enacted by Congress. The American people have noted with great dissatisfaction the steady retreat of President Roosevelt in the face of such organized reaction.

"The Communist Party points out that we cannot rely on Mr. Roosevelt as an effective bulwark against these inroads on the American standard of living. Roosevelt's middle course and consistent retreat will not check Republican reaction.

"Therefore, the Communist Party calls upon labor and progressive forces through independent political action to fight for the following program:

"1. Restore and raise the living standards of the masses, by higher wages, shorter hours, lower prices, extending the trade unions to the basic industries and all workers, through militant industrial unionism; secure the farmers in possession of their farms, with governmental help and guarantee of a minimum standard of life.

"2. Consolidate and extend social and labor legislation, with guarantee of a minimum standard of life for all, financing this with sharply graduated taxes on incomes, property and accumulated surpluses, abolition of sales taxes, balancing the budget at the expense of the rich.

"3. Curb the usurped power of the Supreme Court; maintain and extend democratic rights and civil liberties; dispersal of reactionary bands, abolition of the use of legal machinery to suppress the people's movements; extension of popular control over government.

"4. Restore control of the Government to representatives of the people's organizations, through a broad people's front (Farmer-Labor Party).

"5. Unite with the peace forces of the whole world to restrain the warmakers, to keep America out of war by keeping war out of the world.

"6. Full suffrage for the District.

"Only a strong Communist Party will guarantee the American people the militant promotion of social and economic security.

"Vote Communist!

"Tune in 4 P. M. Sunday, June 28, on Stations WJSV and WMAL. Listen to the acceptance speeches of the Communist candidates in the 1936 elections.

"Issued by the Communist Party of Washington, D. C."

whom the defendants handed such handbills throw or scatter such handbills on the street or ground, nor did he testify that such handbills were likely to be taken up by the wind and scattered in the streets, or in any of the places mentioned in Section 1, Article IX, of the Police Regulations of the District of Columbia.

"On cross-examination the witness testified that he did not see the defendants throw or leave any of the handbills on the ground or elsewhere."

Thereupon the District of Columbia rested its case, and after denial of a motion for a directed verdict, with exception taken in their behalf, the plaintiffs in error commenced their defense and the following took place:

"John Thomas testified that he and the defendant, Margaret Adams, handed to various persons certain leaflets or handbills of the character identified by Sergeant Umbaugh, in front of Griffith's Stadium on the night of June 27, 1936; that Sergeant Umbaugh approached him and the other defendant and said 'You can't hand these things out;' that thereupon both defendants moved to the northeast corner of 7th Street and Florida Avenue, northwest; that they were undecided as to what to do, and that while talking to each other several pedestrians approached them and requested leaflets; that they then handed leaflets to said pedestrians and were thereupon arrested by Sergeant Umbaugh; that neither the witness nor the codefendant dropped or threw any of the leaflets on the ground.

"The defendant, Margaret Adams, took the stand in her own behalf. The Court asked the witness, 'How long have you lived in Washington?' The witness replied, 'About one year.' The Court then asked, 'How long has Thomas been in this city?' The witness answered, 'I think about 18 months.' *The Court then said to the witness, 'You are a communist, aren't you?'* The counsel for the defendants objected to the question, stating to the Court that the political beliefs of the defendants were not an issue and that they were being tried for a violation of the health ordinance prohibiting the littering of streets, and that they were not charged with being Communists. The Court replied, 'That is the charge,' and pointing to the leaflet said, 'It says right here, "Vote Communist".' *The Court then*

said, '*If you do not like our system of government you ought to get out of this country.*' Counsel for the defendants objected to these statements by the Court and argued that the contents of the leaflet was not an issue and pointed out that the only thing they were charged with, according to the Informations, was the violation of Section 8, Article 3 of the Police Regulations of the District of Columbia which reads as follows: [Here counsel read the police regulation]

"The Judge stated, '*They're Communists. They are trying to overthrow the government.*' Counsel for the defendants objected to these statements by the Court and took exceptions.

"The Court asked the counsel, 'Do you agree with them that they have the right to pass out these leaflets?' Counsel replied, 'Yes, they do have the right to pass out these leaflets or any leaflets so long as they do not violate any law in doing so. There is no law in the District of Columbia prohibiting distribution of leaflets that voice pro-Communist or any other sentiments.' *The Court said, 'In that case, if you're one of them, then you should take the witness stand and plead guilty yourself.*' During all this time, the defendant, Margaret Adams, was still on the witness stand. Counsel for defendants stood mute, made no effort or expressed no desire to argue the case. The Judge said to the defendants, 'I find you both guilty, and sentence you to pay a fine of Twenty Five dollars apiece or serve thirty days in jail.' Turning to counsel he said, '*And if you don't like my verdict, you can take an exception.*' Counsel thereupon took an exception. Then he wanted to offer witnesses. The Court stated he said nothing about witnesses until the Court had decided the case.

"After taking such exception, the counsel stated that he had *two additional witnesses he desired to call.* The Court, however, refused to hear any further witnesses or testimony. The Court likewise refused to hear any argument by the counsel. Thereupon the Court stated that the case was closed. Counsel took exception to the Court's ruling and to the sentence imposed. Counsel gave notice that he would present a motion for a new trial. Thereupon, the Court, in lieu of fixing bail bond, permitted the defendants to remain at liberty upon collateral already posted." [Italics supplied]

Motions for a new trial made in behalf of each of the defendants were overruled and the sentences imposed ordered to stand. We granted a writ of error. There were sixteen errors assigned. As argued in the brief of the plaintiffs in error they are grouped into three classes, one assigning an absence of evidence to support the allegations of the information, another assigning an absence of evidence of any violation of the police regulation, and a third assigning manifest abuses of judicial process in the conduct of the trial.

In respect of the third class of errors assigned: The Fifth Amendment to the Constitution of the United States, prohibiting deprivation of liberty without due process of law, means, in its application to judicial hearings, in the often quoted words of Webster, "a law which hears before it condemns." And the Sixth Amendment, guaranteeing the accused in a criminal prosecution the assistance of counsel for his defense, means effective assistance. Powell v. Alabama, 287 U.S. 45, 68-71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. The political opinions of the plaintiffs in error were immaterial to the issues in this case. Whatever their political views were, the plaintiffs in error were entitled under the guarantees of the Constitution to a fair and impartial hearing; and it is obvious from the bill of exceptions, as above set forth, that the hearing accorded them was not a fair and impartial hearing in the constitutional sense. They were in effect forbidden witnesses, and, in the denial of the right to argue the case, there being no written briefs below, were forbidden the effective assistance of counsel.

It is contended by the District of Columbia that the rights of the plaintiffs in error were not suitably preserved, in respect of the refusal of the judge to hear witnesses, because of failure of their counsel to make a specific offer of proof. We are aware of the rule requiring, in ordinary circumstances, a proffer. But counsel were not required to do a palpably vain thing. It was apparent that the judge would receive no further evidence. The District further contends that exceptions were not taken to all of the rulings and remarks complained of. "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555. Finally the District contends that, since the plaintiff in error Thomas admitted on the witness stand that he and the plaintiff in error Adams had handed out handbills, there was no issue of fact in the case—that the only question before the trial court was one of law, that is, whether the undisputed facts constituted a violation of the police regulation. Hence, we are told, the assigned abuses of judicial process cannot amount to prejudicial error. But we cannot say that there would have been no issue of fact, as respects the plaintiff in error Adams, had she and the other witnesses been permitted to testify. Her testimony and that of such witnesses might, conceivably, have been a denial that she participated in passing out the handbills. Presumably no issue of fact as to this would have been raised by the plaintiff in error Thomas, but as the trial was joint, and in our view not as a whole conducted within the constitutional guarantees, we think we ought not rule separately in respect of the two plaintiffs in error.

As to the first and second classes of errors assigned: These involve questions as to the meaning of the statute, and as to the constitutionality thereof. But we think that, in view of the manner of the trial, we ought not pass on either of these questions, but should return the case for a rehearing conducted according to law, with opportunity to present full proof on all aspects of the case and to argue the case. There could have been no adequate determination below of either the factual or legal questions, and we are not disposed to rule upon any of such questions until the case has been retried.

The judgment of the trial court is

*Reversed and the case remanded for further proceedings not inconsistent with this opinion.*