PUTMAN v. MOORE.

No. 9686.

Circuit Court of Appeals, Fifth Circuit.

April 19, 1941.

Rehearing Denied May 31, 1941.

Stanley Boykin and H. C. Ray, both of Fort Worth, Tex., for appellant.

Geo. W. Rice and B. K. Goree, both of Fort Worth, Tex., for appellee.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment dismissing an intervention in the receivership proceedings of the Virginia Oil & Refining Co. and rejecting appellant's claim to be recognized as a stockholder in that company, entitled to a share of a fund to be distributed to stockholders. The question presented for decision is one of fact but it is somewhat difficult of solution.

The background evidence is material. Virginia Oil & Refining Co. was adjudicated bankrupt in the Northern District of Texas, January 29, 1923. The trustee was discharged in 1926 but the bankruptcy proceedings were not formally closed and the bankrupt was not discharged. All the available assets had been liquidated except a number of leases covering land in what is now known as the East Texas Oil Field. They were considered valueless but were not disposed of nor abandoned by the trustee. Oil was discovered in the East Texas Field and it became at once apparent the leases were very valuable. The bankruptcy proceedings were revived in February 1931 and a new trustee was appointed. In September, 1931, as it appeared probable there would be a substantial surplus for the stockholders after liquidation of the debts of the bankrupt in full, a receiver was appointed to stand by and receive the fund and a master was appointed to take the evidence and pass upon the validity of the claims. For the facts more in detail we may refer to our decisions in Berl v. Crutcher, 5 Cir., 60 F.2d 440; and First National Bank of Fort Worth v. Virginia Oil & Ref. Co., 5 Cir., 86 F.2d 770.

W. P. Luse solicited many stockholders to file claims through him. On January 6, 1932, an intervention was filed by Putman, appellee, and Luse, in which it was claimed they were joint owners of 10,126 shares of the capital stock of the bankrupt, Luse having acquired his interest by assignment for his services. The receiver contested the claim.

By agreement of counsel interrogatories were propounded to Putman as a witness. In answering them he said that he had purchased his stock at various times from Gaines B. Turner, president of the bankrupt, had paid $1 a share for it; that he did not know just how many shares he bought; that since 13 years had elapsed it was hard to remember; that he paid cash for some and gave his check for some but had not preserved the checks; that he had made an earnest effort to locate his stock certificates but had been unable to find them. He did not know where they were at that time; that they were lost, misplaced or destroyed by mistake or in someway; that he had not exchanged the stock for any other company's stock and had not transferred, sold, or given the stock to any one and that he did not know where it was. It appears from the records in the two cases above cited that all the books and records of the bankrupt had been either lost or destroyed.

The intervention of Putman and Luse was denied on November 23, 1933, because of insufficiency of the proof submitted, but on December 22, 1933, the case was reopened, a hearing was had before the master and Putman was allowed to offer further testimony. He appeared in person and, in substance, testified that he was born and raised on a farm, was 57 years of age and had been living in the same location all his life; that he bought his stock 12 or 14 years before, when the company was doing business in Fort Worth, from Gaines B. Turner; that he kept a safe deposit box in a bank and had looked for them but had not found them and had looked through his private effects in his home without success; that shortly after he made the purchases he made a memorandum to that effect and filed it away; that it just stated the shares and the amount of shares and that was all the record he had; that he did not have the memorandum; that he had it at the time Luse first wrote to him regarding the probability of having some recovery from the stock; that the memorandum showed he had 10,000 shares in the Virginia Company, Inc., and 126 shares in the Virginia Oil & Refining Co.; that the

memorandum was in his own handwriting; that he knew it was correct; that he did not know what happened to the memorandum; that some one unlocked or opened his desk and took two deeds to two pieces of land in Oklahoma and the memorandum disappeared at the same time; that he did not know who opened his desk as the place was alone and some one went in and ransacked the house; that he paid $1 a share for the stock; paid for some in checks; that he keeps his cancelled checks a reasonable length of time, usually about 12 months, did not think it was necessary to keep them longer than that; that he never borrowed any money on the stock, never delivered them to any one else, never sold them; that during the war he tried to do his part buying Liberty bonds and he had eight of them and he also had a memorandum of them and he tried to keep a double check on all of them; that that was his procedure in all his investments. He also testified that he had invested money in other oil stock but he never kept any account of them. He bought some land and paid for it out of the profits and he could only approximate the amount he made as about $25,000.

There was no other evidence taken on the intervention and the master ruled in favor of Putman and Luse, each for 5663 Class A shares of capital stock in the Virginia Oil & Refining Co. Exceptions were taken to the master's report and an appeal to the District Court followed.

The District Judge reached the conclusion that Putman had no independent recollection of the transaction; that his memory was not refreshed by the memorandum; that he did not have the memorandum and if he had possessed it, he could not have introduced it in evidence, as it would have had no probative effect. For that reason he overruled the master and dismissed the intervention.

■■ The general rule, long recognized, is that a witness may use a memorandum that he knows to be correct to refresh his recollection. Obviously, in many cases the witness has no recollection, refreshed or otherwise, of the original transaction. When he testifies he is doing so solely on the faith of the correctness of the memorandum. The rule permitting use of memoranda in aid of oral testimony has been very much broadened in recent years. Wigmore divides the subject into past and present recollection and discusses it fully in his third edition, § 726 et seq. The modern doctrine is to permit a witness to testify as to past transactions from a memorandum that he knows was accurate at the time it was made, although he has no recollection whatever of the original transaction. This finds support in the following Texas cases: Payne v. Texas Mercantile Co., Tex.Civ.App., 248 S.W. 79; Fire Ass'n of Philadelphia v. Nami, Tex.Civ.App., 77 S.W.2d 260; Southern Pacific Co. v. Cox & Co., Tex.Civ.App., 136 S.W. 103; St. Louis Southwestern Ry. Co. of Texas v. Mitchell, Tex.Civ.App., 127 S.W. 876; Kansas City Southern Ry. v. Rosebrook-Josey Grain Co., 52 Tex.Civ.App. 156, 114 S.W. 436.

■■ Analyzing appellant's testimony it is apparent that he testified positively he bought stock in the bankrupt from Gaines B. Turner at $1 a share. His name must have appeared somehow in the records of the bankrupt or his claim would hardly have been solicited by Luse. When it was filed in 1932 there must have been something to indicate to him or Luse the amount of shares he had bought. Since Virginia Oil & Refining Co. was adjudicated bankrupt in January 1923, doubtless the stockholders for about 8 years considered the stock worthless. Possibly many of them threw it away. He answered the interrogatories in May, 1933, 13 years after he bought the stock and 10 years after the company was adjudicated bankrupt. For a man of his occupation as a farmer, keeping no books or records, it is not surprising that he had forgotten how many shares he had purchased. If he had intended to file a false claim he had only to swear positively as to the number of shares purchased and there would have been no way of disproving his testimony. Or he could have colored his testimony by saying he then recollected the transaction. When he testified as to the memorandum he had seen it only two years before his testimony. We think that was sufficiently recent to permit him to testify as to the memorandum. He impressed the master, who saw and heard him, with his honesty and truthfulness. We think his past recorded recollection of the event, reflected in the memorandum, was sufficient to sustain the validity of his claim, in the absence of evidence to the contrary.

After the case was submitted appellee filed a motion to remand the case for the purpose of introducing a transcript of testimony given by Putman in another case,

on the theory that it tended to contradict his testimony given in support of his intervention. The transcript of the evidence was attached to the motion. We have considered that and do not find it relevant or persuasive.

The motion to remand is denied.

The judgment appealed from is reversed and the case remanded with instructions to allow appellant to participate in and receive his share of any surplus that may be available for distribution to the stockholders.