## McKENZIE v. UNITED STATES.
### No. 7998.

United States Court of Appeals for the
District of Columbia.

Argued Jan. 12, 1942.

Decided March 9, 1942.

Mr. John H. Wilson, with whom Mr. William A. Powell, both of Washington, D. C., was on the brief, for appellant.

Mr. Bernard Margolius, Assistant United States Attorney, with whom Mr. Edward M. Curran, United States Attorney, both of Washington, D. C., was on the brief, for appellee.

Before GRONER, C. J., and STEPHENS and RUTLEDGE, JJ.

PER CURIAM.

Appellant was convicted in the court below on each of two separate indictments, one charging rape, the other robbery. He was sentenced on the former to suffer the death penalty. The offenses were charged to have occurred June 24, 1941. Indictments were returned July 8, and the trial was had July 28.

The victim of the assault and robbery was Mrs. Vada Abarca. In the afternoon of June 24, 1941, she was alone in the cleaning and pressing establishment in which she was employed, located in 14th Street, N.W., in Washington City, when a Negro man wearing dark glasses came in and, after inquiring the cost of pressing a suit of clothes, went to the front door, locked it, and with a pistol pointed at her head, first robbed the money drawer, and then forced her into a back room, tied her hands, made her lie down on the floor, and then criminally assaulted her. He left her gagged and tied to a post, taking with him at least one suit of clothes belonging to a patron of the place. The witness described her assailant as dark skinned, between thirty and thirty-five years of age, of medium height and build, with a deep-set nose and long protruding lips, and wearing a brown suit and sun glasses. Two days later she identified appellant, who was then and there arrested and lodged in the jail house.

Upon the return of true bills charging rape and robbery, appellant filed a motion to quash in the following language:

"That said indictments were returned by the grand jury of the United States of America in and for the District of Columbia, sworn to act for and during the July term, A.D. 1941. That the defendant is a Negro; that the above said grand jury which returned said indictment did not have upon it any member of the Negro race; that the defendant therefore charges that a systematic course of procedure was adopted for the purpose of excluding Negroes from said grand jury on account of their color."

The motion was supported by the affidavit of counsel "on information and belief." Five days later, the motion was overruled, and appellant excepted.

■■ We think the action of the trial court correct. There was neither proof nor offer of proof of the intentional exclusion of Negroes from service on grand juries generally in the District of Columbia. What the motion charges is a systematic course of procedure for the purpose of excluding Negroes from the particular grand jury which brought in the indictment. Doubtless this was enough if proved, but there was no proof or offer of proof of this charge. While we may take judicial notice of the presence in the District of Columbia of members of the Negro race possessing the qualifications of jurors, we cannot take judicial notice of their exclusion, systematic or otherwise, without proof or an offer of proof to that effect. Precisely this was decided in Tarrance v. Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L. Ed. 572, and Smith v. Mississippi, 162 U. S. 592, 16 S.Ct. 900, 40 L.Ed. 1082.

■ This being a death case, we have exercised the right to examine the entire record, without regard to assigned errors, to determine whether the accused has had a fair and impartial trial. United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555; Thomas v. District of Columbia, 67 App.D.C. 179, 183, 90 F.2d 424, 428; Kinard v. United States, 69 App.D.C. 322, 101 F.2d 246.

Briefly summarized, the evidence as to identification shows that two days after the assault Mrs. Abarca and a Miss Harper were driven by two police officers to various parts of the colored sections of the city. The presence in the car of Miss Harper was due to the fact that a week or so prior to the assault on Mrs. Abarca a Negro man had robbed the cleaning establishment in which she was the attendant, and the theory of the police was that the same person had committed both crimes. The purpose of the trip was to enable them to view as many colored men as were seen in their drive through the city. After some five or six hours, Mrs. Abarca pointed out appellant, standing on a street corner, as her assailant. When called as a witness at the trial, Mrs. Abarca testified on her di-

rect examination to the presence of Miss Harper in the car, but to nothing more in relation to her. On cross-examination counsel for appellant asked what the officers had first said to her and to Miss Harper, and she replied they asked us if we would mind helping them look "for this person." Counsel then asked the witness if Miss Harper said anything to the officers, and upon the District Attorney's objection to the question, counsel stated to the court that he purposed showing that Miss Harper first identified appellant as the man who had robbed her and that Mrs. Abarca's identification was induced by this prior identification. The court refused to allow the question to be asked, on the ground that it would bring to the attention of the jury a third crime for which appellant had been indicted but on which he was not then on trial, and would tend to incriminate him in another offense. Counsel answered that he was willing to take the risk, and he intended to follow up by showing that Miss Harper was mistaken. The court then permitted counsel to ask who first pointed out the man, and the witness (Mrs. Abarca) answered she had, and that Miss Harper had then "hollered" but she did not know what she "hollered."

Again, when one of the escorting police officers was on the stand, he was asked by counsel for appellant what Miss Harper had said at the moment of identification. The District Attorney objected, and the court declined to allow the witness to answer, on the ground that it would introduce another issue in the trial. Then ensued a colloquy between court and counsel, as the result of which the court ruled the question might be asked "at appellant's own risk." The witness answered "she [Miss Harper] said he was the man who held her up."

Thereafter the government placed Miss Harper on the stand and asked her only if she heard and saw Mrs. Abarca point out the defendant as her assailant. She answered in the affirmative, and then on cross-examination appellant's counsel asked her if she had not herself identified appellant as the man who had robbed *her*, and she answered, she had. He then asked her if she had not subsequently recanted, and she answered that she had not.

After the close of the government's case, counsel for appellant called Beulah Jones as a witness and asked her if she knew Miss Harper, and she replied she had seen her on the morning of the hold-up, meaning the robbery of the place at which Miss Harper was an attendant. On objection by the District Attorney to any further evidence in relation to the other offense, counsel for appellant told the court that the purpose of calling this witness was to show that she was present when the colored man who had robbed Miss Harper's place came out of the door, that the witness had a good look at his face, and would say that appellant was not the man. The court sustained the objection.

Enough, we think, has been said to make clear the fact that counsel for appellant, recognizing that the conviction of his client rested primarily on the identification of Mrs. Abarca, believed he could break down the effect of her testimony by showing that Miss Harper, with equal opportunity of recognition, had identified the wrong man. As it happened, however, the zeal of counsel outran his discretion, and the result was that the jury were apprised of another serious crime of which defendant was accused, though it may very well be, of which he was wholly guiltless; but the disclosure of which, notwithstanding the court's caution to the jury to disregard it, weighed heavily against his plea of innocence. We think that the court, having warned counsel that if he asked the question he did so at his peril, was right in refusing to allow him to contradict the answer. Wigmore on Evidence (3rd Ed.), § 1020.

A careful search of the record shows that the conviction rests largely on Mrs. Abarca's testimony that the accused, and not someone else, had raped her and robbed her. In her first statement to the police, she described her assailant as a man between thirty and thirty-five years of age, whereas witnesses at the trial spoke of appellant as a boy. Mrs. Abarca likewise described her assailant as having certain definite facial characteristics, whereas in her identification of appellant from the police car she stated her recognition of him was because he wore dark glasses and had long arms. She testified that he was dressed in a brown suit, though at the time of his arrest he was wearing a gray suit, and there is no evidence that he possessed a brown suit. Nor was the pistol which she says he used or the clothing which she said he had stolen, or the money which he had taken, found in his possession. Neighbors testified to his good character and to his

having a night job at which he worked regularly, and the thorough examination by the police had failed to shake his statement that he had never seen the prosecuting witness before. These circumstances, it is true, lack much of making out a complete defense. But that, under the law, was not the obligation of the accused. They were, however, important enough to be called to the attention of the jury, to be weighed together with the evidence in support of the legal presumption of innocence. But no more on this line need be said, since in the view we take the case must be retried for error on the part of the court in instructing the jury.

In his charge, the judge, after defining the crimes of rape and robbery, told the jury that appellant "has entered a plea known as an alibi," and if they believed that at the time of the commission of the crime he was at another place "so far away or so distantly removed, that under such circumstances he could not with ordinary exertion have reached the place where the crime was committed," they should find him not guilty, but the fact is that appellant had not entered a special plea of alibi or rested his defense solely on that ground. His plea was "not guilty." He had, it is true, testified that on the day in question he returned from his work at about 4:30 in the morning, went to bed, and got up about 10 o'clock, then went to a store and on his return home went again to bed, and slept until about 2 o'clock and then got up and stayed around the house until 4 in the afternoon. This, of course, was the equivalent of saying that he was not at the place of the crime when it occurred. But this did not embrace the whole of his defense, and by singling out the alibi and emphasizing it the court in effect directed the minds of the jury almost exclusively to that aspect of the case. They were told that if they believed appellant was at home when the rape was committed, they should find him not guilty, but nowhere else in the whole charge were they told that in any other circumstances they should also find such a verdict. They were told that if they believed beyond a reasonable doubt that defendant robbed Vada Abarca, they should find him guilty of robbery; if they believed beyond a reasonable doubt that he ravished Vada Abarca, they should find him guilty of rape, but they were not told that if the evidence failed to measure up to the required standard they should find him not guilty. Referring to the conditions ob-

taining at the time of identification, the court said the jury should take into consideration the attitude of the "parties" on that occasion—what "parties" the court had in mind is not clear; that they should take into consideration the number of people that had been passed and inspected, the attitude of Mrs. Abarca upon coming "in view of this particular person," meaning of course, appellant; that they should search their "reasoning powers as to what motivated the selection of this particular person from among all others." "There is," said the court, "always an uncertainty in the human element, namely, something produced to him; maybe it was the real identity of the man who ravished her. We can never know just exactly what produced those actions." Precisely what meaning the jury attributed to this unusual language we cannot be sure. But since the verity of identification was the point on which the case would turn, the quoted words above should undoubtedly have been followed by a caution that if the "motivation" was not convincing beyond a reasonable doubt, the jury should find the defendant *not guilty*. The possible implication from the words used, that less than positive and unqualified certainty was sufficient, was permission to the jury to guess or speculate. And the failure to say in plain words that if the circumstances of the identification were not convincing, they should acquit, was error. Passing upon a similar question in McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21, we said on this subject, it should be orthodox practice somewhere in the instruction to tell the jury in precise terms that a "not guilty" verdict is necessary in the event of failure by the government to prove each of the elements of the offense beyond a reasonable doubt.

In that case, as in this, the court told the jury in the usual terms that the defendant was presumed to be innocent and that the government was obliged to rebut this presumption by proof of guilt beyond a reasonable doubt. But in that case, as in this, the court failed to say, in terms, that unless they found from the evidence beyond a reasonable doubt that all of the elements of the crime charged existed, they must acquit the defendant. That is the rule in the District of Columbia, and it should have been followed in the present case, and since it was not, we are required to reverse and remand the case for a new trial.

Reversed and remanded.