## SHOKUWAN SHIMABUKURO v. HIGE-YOSHI NAGAYAMA.

### No. 8414.

United States Court of Appeals
District of Columbia.

Argued Nov. 4, 1943.

Decided Jan. 3, 1944.

Mr. John Wattawa, of Washington, D. C., with whom Mr. Vivian O. Hill, of Washington, D. C., was on the brief, for appellant.

Mr. Richard E. Wellford, of Washington, D. C., with whom Mr. Simon R. Golibart, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

This is an action to recover $3,935.60 alleged to have been advanced to defendant below by plaintiff below. Plaintiff conducted a hairdressing school in Washington. Prior to June, 1932, he read in the paper that defendant was about to receive a large legacy. Shortly after that, according to plaintiff's testimony, defendant came to plaintiff's shop and asked for a series of small cash loans, all of which he promised to repay with interest when the legacy was received. Pursuant to this arrangement (again according to plaintiff's testimony) he advanced to defendant a succession of small sums from day to day at his shop during a period of five years from June, 1932, to October, 1937, amounting to a total of $4,255.60. He admits payment of $320 on this account.

Defendant admitted that he had borrowed small sums from the plaintiff; but testified that the total amount due had never been more than $250, which he paid in full with interest. To prove payment, defendant introduced a check for $300 endorsed by plaintiff in full settlement of the account. Plaintiff denied that the statement as to settlement was on the back of the check when he signed it.

The only evidence of sums loaned to defendant above the amount which was repaid consists in entries on nine sheets of scrap paper. There are 384 such entries showing small items ranging from $2 to $20, together with dates. The sheets are full of erasures and corrections. Before introducing these sheets in evidence plaintiff testified that he had no recollection of the truth of any of the entries. He stated, however, that each entry was made at the time of the cash loan which it represented or within a day thereafter, and that he knew that the entries were true when made.

Each of the pencilled sheets covers a period of several months. A handwriting expert testified that the character and alignment of the writing shows that the entries were not made from day to day, as plaintiff testified, but at a single sitting. An examination of the sheets themselves tends to corroborate this expert testimony.

Testimony which is neither contradicted nor impeached shows that a series of cash advances shown on the memoranda for June, July and August, 1936, could not have been made in the way plaintiff testified. It establishes that defendant took an extended trip in the West during those months. This testimony also creates a strong inference against the credibility of the sheets for the previous year of 1935. No items of loans appear during June, July and August of that year. Such a coincidence is difficult to explain except on the theory that the memoranda were prepared at a time when plaintiff had forgotten the year of defendant's trip.

The credibility of the entire set of records is further shaken by the fact that prior to filing suit, instead of making a demand for payment, plaintiff wrote the defendant asking for money which he promises in the letter to repay. No indebtedness from defendant is mentioned; the letter goes into detail about the financial difficulties of plaintiff and explains the sources of income from which he expects to repay the defendant. It was written at a time when plaintiff would have us believe defendant owed him about $4,000. No explanation of this letter is offered which is consistent with the existence of indebtedness from defendant to plaintiff. It was suggested that some peculiar Japanese convention of politeness between debtor and creditor required plaintiff to promise to repay collections which he received on account of the debt, but the record contains no evidence to support the existence of such an extraordinary oriental custom.

At the trial, counsel for plaintiff in cross-examining witnesses for the defendant emphasized the irrelevant fact that the defendant, a Japanese, was an aviator. Further questions raising the prejudicial inference that defendant, a Japanese, had taken a trip with the daughter of one of the American witnesses compelled the court to reprimand counsel.

On the face of this record the court instructed the jury in effect that they could pick and choose among the 384 items entered on the nine pencilled sheets, rejecting those items they believed to be false or not made contemporaneously with the loan, and accepting the balance. After retiring, the jury requested further information on their power to accept or reject items and were again told without qualification that they could pick and choose among the entries. Apparently acting on this instruction the jury brought in a verdict for $1,000,—an amount which cannot be supported on any plausible theory of the evidence.

Had proper objection been made, the above instructions would have been error. The record clearly entitled the defendant to instructions that falsity of some of the items on a particular sheet entitled the jury to find that the entire sheet was false, and that a showing that part of a sheet was not contemporaneously made created a strong inference not only against the entire sheet but against plaintiff's testimony as to the whole set of memoranda. Without this qualification the instruction that the jury could reject or accept at random any of the 384 items was an invitation to guesswork and speculation.

The defendant, however, did not request such an instruction, and his objection to the instruction given is on vague and uncertain grounds. The best that can be said is that defendant suggested an idea to the court on the basis of which a proper instruction could have been drawn.

Rule 51 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that no party may assign as error the giving or failure to give an instruction unless he distinctly presents to the trial court his ground for objection. This conforms to the practice generally followed in appellate procedure everywhere. Hence the error in instructing the jury in this case cannot be raised by the defendant.[1] If it is considered at all it must be on motion of the court.

The power of an appellate court on its own motion to consider grounds of error not raised below is not one which should be exercised in an ordinary case.[2] But where it is apparent to the appellate court on the face of the record that a miscarriage of justice may occur because counsel has not properly protected his client by timely objection, error which has been waived below may be considered on review.[3] Mr. Justice Black has recently said: "There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below."[4]

Heretofore this court has noticed error which parties waived by failure to object at the trial court, to avoid injustice in criminal cases.[5] There is no logical reason for refusing to exercise our power to notice fundamental error in cases where personal or property rights are involved, and our Rule 17(i), which states the principle, makes no distinction between civil and criminal actions.[6]

The power to notice error waived by the parties should be sparingly used, but the case before us is one which justifies its exercise. The verdict is based on memoranda which strain credulity. While we hesitate to order the court to sustain defendant's motion to direct a verdict, because the issues depend on oral testimony, we can at least say that the evidence is such that had the court chosen to grant the motion we would have sustained that ruling on this record. The amount of the verdict suggests that the jury accepted the court's invitation to guess and compromise by accepting or rejecting at random items scattered on the nine sheets, without con-

---

[1] Robinson v. Parker, 1897, 11 App.D.C. 132; Globe Furniture Co. v. Gately, 1922, 51 App.D.C. 367, 279 F. 1005; Stewart v. Capital Transit Co., 1939, 70 App.D.C. 346, 108 F.2d 1.

[2] Mr. Justice Stone in Duignan v. United States, 1927, 274 U.S. 195 at page 200, 47 S.Ct. 566, at page 568, 71 L.Ed. 996, said: "This court sits as a court of review. It is only in exceptional cases coming here from the federal courts that questions not pressed or passed upon below are reviewed."

[3] Sibbach v. Wilson & Co., Inc., 1941, 312 U.S. 1, at page 16, 61 S.Ct. 422, at page 427, 85 L.Ed. 479, where Mr. Justice Roberts said: "The District Court treated the refusal to comply with its order as a contempt and committed the petitioner therefor. Neither in the Circuit Court of Appeals nor here was this action assigned as error. We think, however, that in the light of the provisions of Rule 37 it was plain error of such a fundamental nature that we should notice it. Section (b) (2) (iv) of Rule 37 exempts from punishment as for contempt the refusal to obey an order that a party submit to a physical or mental examination. The District Court was in error in going counter to this express exemption. The remedies available under the rule in such a case are those enumerated in Section (b) (2) (i) (ii) and (iii). For this error we reverse the judgment and remand the cause to the District Court for further proceedings in conformity to this opinion."

[4] Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037.

[5] Freed v. United States, 1920, 49 App. D.C. 392, 266 F. 1012; see Schwartz v. United States, 1926, 56 App.D.C. 105, 106, 10 F.2d 900, 901 (citing additional authorities). McAffee v. United States, 1939, 70 App.D.C. 142, 150-151, 105 F.2d 21 (death penalty); McKenzie v. United States, 1942, 75 U.S.App.D.C. 270, 126 F.2d 533 (death penalty); Boykin v. United States, 1942, 76 U.S.App.D.C. 147, 130 F.2d 416 (appeal and record perfected under unusual circumstances).

[6] "Points Not Presented. Points not presented (errors not assigned in criminal cases from the district court) according to the rules of the court, will be disregarded, though the court, at its option, may notice and pass upon a plain error not presented or assigned."

And see Neufield v. United States, 1941, 73 App.D.C. 174, 190, 118 F.2d 375, 391: "A plain error may, of course, be noticed, *especially* in a criminal case, even though not assigned." (Emphasis added.)

sidering the authenticity of any of the exhibits as a whole. On such a record we may notice the error in the instruction even though in an ordinary case we would have considered it waived.

■ The other objections or grounds of error urged are not well taken. It is suggested that the memoranda were not admissible in evidence because they were not books of account made in the usual course of business. But the rule as to admissibility of books of account does not apply to a case where the witness who made the entries testifies that he has no present recollection of the facts they are offered to prove but that he knows the entries were true when he made them. This is a form of past recollection recorded and is admissible as such.[7]

We find no merit in the cross-appeals filed by appellee.

The judgment of the lower court will be reversed and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

GRONER, C. J. (concurring).

I am in accord with the statement in the opinion that it would be our duty to affirm if the trial court had approved defendant's prayer for a directed verdict, but I go further and think it was the manifest duty of the court to have granted the prayer and that its failure to do so was error requiring reversal. It is solely on this ground that I concur in the result.

---

[7] Putnam v. Moore, 5 Cir., 1941, 119 F.2d 246; see III Wigmore on Evidence (1940), § 734, p. 64; ibid., § 737(2), p. 75.