**BARNES v. WHEELER, Inc.**

No. 537.

Municipal Court of Appeals for the District of Columbia.

Oct. 2, 1947.

Lewis E. Barnes, pro se (S. Laddie Ivy, Jr. and James M. Coggs, both of Washington, D.C., on the brief), for appellant.

Charles H. Quimby, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

In an action by plaintiff-appellant for damages for breach of warranty on a used car sold to him by defendant-appellee, and for violation of applicable OPA price regulations, plaintiff appeals from a judgment awarding him $147.11, together with interest and costs.

Defendant, a used car dealer, sold the car to plaintiff on March 22, 1946, and delivered along with the car a warranty in the prescribed OPA form, reading:

"The used car * * * is hereby warranted to be in good operating condition, and to remain in such condition under normal use and service for a period of 30 days after delivery or 1000 miles, whichever may first occur.

"We agree, if said vehicle is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser * * * of not more than 50% of the normal charge for such repairs and replacements. Our normal charge is not in excess of OPA ceilings.

"This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence, or accident."

The price charged plaintiff was below the maximum allowed for that make and model if warranted, but was $321.66 more than the maximum if unwarranted. Within thirty days after the sale, plaintiff experienced difficulty with the motor cooling system and returned the car to defendant for repairs; on the refusal of the defendant to remedy the difficulty without cost to plaintiff, the latter took the car to another local garage, where the defect was analyzed as a crack in the motor block, and repaired at a reasonable cost of $294.22.

The case below was tried to a jury which found, in answer to specific questions, that the car in question was in good operating condition at the time of sale; that the defendant did not know, and could not reasonably have known, of the existence of any defect in the motor; and that the defect in the motor occurred during the thirty-day period or 1,000 miles referred to in the warranty, and that said defect did not result from misuse, negligence, or accident but from the normal use of the car. Based upon these answers the trial court gave judgment for plaintiff for $147.11, representing damages for breach of warranty and based upon one-half the reasonable cost spent by plaintiff for having the defect repaired.

In his charge to the jury, the contents of which were agreed to by both parties, the trial court said in part:

"If the plaintiff established by a preponderance of the evidence that there had been a breach of warranty by the defendant, the plaintiff was entitled to recover $147.11 (i. e. one-half the cost of making the repairs) plus an amount, to be fixed by the jury, not less than $321.66 (i. e. the difference between the actual sale price and the maximum price ceiling if the sale had been made without a warranty) and not more than $964.98 (i. e. three times this difference), unless the defendant established by a preponderance of the evidence that the breach of warranty and the violation of OPA regulations consequent thereon were neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, in which event the plaintiff would be entitled to recover $147.-11 (i. e. one-half the cost of making the repairs)."

The plaintiff on appeal alleges that this charge was erroneous. He claims that

not only was he entitled to the breach of warranty damages actually recovered but also an amount in addition as a penalty for an overcharge under the act. He urges that the measure of such overcharge should have been the difference between the actual sale price of the car, and the maximum price permissible if it had been sold as an unwarranted used car.

Since the plaintiff did not object to the charge before it was delivered to the jury, the question arises whether we can entertain this objection. The rule in this jurisdiction is that set out in Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 U.S.App.D.C. 271, 140 F.2d 13, certiorari denied 322 U.S. 755, 64 S.Ct. 1270, 88 L. Ed. 1584, wherein it was stated that, although the party aggrieved cannot raise on appeal an error in an instruction to the jury which he did not raise below,

"The power of an appellate court on its own motion to consider grounds of error not raised below is not one which should be exercised in an ordinary case.

"But where it is apparent to the appellate court on the face of the record that a miscarriage of justice may occur because counsel has not properly protected his client by timely objection, error which has been waived below may be considered on review." 78 U.S.App.D.C. at page 273, 140 F.2d at page 15. See also Lambur v. Yates, 8 Cir., 148 F.2d 137.

We have concluded that the charge to the jury clearly misapplied the statute and hence that a miscarriage of justice would result from allowing its effect to stand. We have also concluded that the contention of plaintiff as to the amount to be recovered likewise is not supported by the statute or applicable OPA regulation.

Section 5(b) of OPA Maximum Price Regulation 540, as amended, issued September 6, 1945, 10 Fed.Reg. 11556, provided the method of fixing the maximum prices of used motor vehicles and equipment at the time of this sale. Under this regulation the base price of the automobile sold to plaintiff, with equipment, was $1,548.34, when sold without a warranty, and was $1,935.42 when sold with a warranty. Section 5(a) (3) of such regulation provided in part:

"The inclusion in the maximum prices of an additional amount when a used car is warranted is conditioned on the used car being in good operating condition as defined in section 7(b). If a dealer sells at the 'warranted' maximum price a used car not in good operating condition he makes an overcharge in excess of the permitted maximum price (the 'nonwarranted' maximum price).

"The inclusion in the maximum price of an additional amount when a used car is warranted is also conditioned upon the making of repairs or replacements in accordance with the dealer's warranty. If the dealer refuses so to make these repairs or replacements, the maximum price for the car shall be the maximum price for the car when warranted reduced by 50% of the amount the purchaser would have to pay for the repairing or replacement which the dealer should have made under his warranty, and the dealer shall refund the amount of that reduction to the buyer. Refusal to refund that amount will constitute an overcharge in excess of the maximum price. If, upon the dealer's refusal to make repairs or replacements in accordance with his warranty, the purchaser has such work done by another before receiving a refund from the dealer, the actual cost of such work shall be considered the amount which the purchaser would have to pay and 50% of that figure shall be the amount by which the maximum price is reduced. For the purposes of this section, failure to make repairs or replacements required by the warranty within a reasonable time from the date the car is delivered to the place of business of the dealer shall constitute a refusal to make such repairs or replacements *regardless of the reasons why they are not made.* (Emphasis supplied.)

"When a dealer charges the 'warranted' maximum price for a used car not in good operating condition, or fails to make the above refund when he, the dealer, does not make the repairs or replacements required by his warranty, he is liable to the sanctions imposed by the Emergency

Price Control Act of 1942, as amended, including the payment of damages to the buyer pursuant to section 205(e)."

Section 13 of ¡the regulation made any violator of the provisions of the regulation subject to the criminal penalties, civil enforcement actions, proceedings for suspension of licenses, and suits for treble damages provided in 205(e). The latter section provided, 50 U.S.C.A.Appendix, § 925(e), as amended, that "In any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine * * *. *Provided, however,* That such amount shall be the amount of the overcharge or overcharges if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." Section 2(a) (3) of MPR 540 provided that "No dealer shall retain payment in excess of the adjusted maximum price where the maximum price has been adjusted downward, pursuant to section 5 (a) (3), because of his failure to make the repairs or replacements required under his warranty."

■ The error, both in the jury instruction as given and in the position urged by plaintiff, lay in using the maximum price of an *unwarranted* car as the base for arriving at the amount of the overcharge. Under the regulations such base is applicable only when the dealer sells at the "warranted" maximum price. a used car not in good operating condition at the time of sale. Here the jury found the car was in good operating condition when sold and hence such base did not apply.

■ Defendant's fault was the refusal to make or pay for the repairs. Defendant then became liable for an overcharge "regardless of the reasons" why the repairs were not made. The amount of such overcharge is not based upon the *unwarranted*

maximum price, but upon the maximum *warranted* price adjusted according to the regulations.

If the dealer refuses to make the repairs one-half the cost the purchaser would have to pay for the repairs (if the repairs are not actually made), or one-half the actual cost of the repairs (if made) must be subtracted from the permissible maximum *warranted* price of the car, and the result is the new maximum price for the warranted car. This being so, and the defendant having refused to make the repairs on plaintiff's car which the jury found arose from the normal use of the car, and which defendant therefore was. compelled to make (at half price) under his warranty, plaintiff was overcharged in an amount representing the difference between what he actually paid ($1,870) and the adjusted maximum price for the warranted car ($1,935.42 less $147.11, or $1,788.31). Such difference was $81.69.

It results, therefore, that in addition to the $147.11 awarded plaintiff on account of the breach of warranty, he was entitled to a sanction of at least $81.69 representing the overcharge.

■ Whether he was entitled to recover er such amount of overcharge or to a larger amount not exceeding three times that item depends upon whether the act of the defendant in refusing to make the repairs was willful or the result of defendant's failure to take reasonable precautions. Here in the statement of proceedings and evidence approved by both counsel and by the trial judge, it is recited that defendant offered evidence which, if fully accepted by the jury, would have been sufficient to establish that the damage to the car was the direct result of plaintiff's own reckless operation and abusive use of the automobile and also that defendant's failure to make the repairs was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. Plaintiff offered evidence to the contrary. While interrogatories covering other issues in the case were submitted to the jury, the question of the willfulness of the failure to make repairs was not so submitted. A somewhat analogous ques-

tion was submitted to the jury as interrogatory numbered 3, but such question was not answered. Such failure to have the jury pass upon this question was error. Since the case will have to be tried on this issue, we call the trial court's attention to the judicial definitions of "willful" and "failure to take reasonable precautions" as used in this statute.[1]

Plaintiff also urges that the trial court erred in refusing to allow an attorney's fee. While plaintiff appeared in proper person on this appeal, he was represented at the trial by counsel. The statement of proceedings and evidence as signed by the trial judge recites as reasons for not allowing a counsel fee that plaintiff did not include any demand for such fee in his complaint; that while in his motion for a judgment consistent with the verdict he did ask for a reasonable attorney's fee, the subject was not mentioned during the oral argument on such motion; that no reference to an allowance of an attorney's fee was made in the motion for rehearing; and that no showing was made at any time of how much was requested by way of attorney's fee or how much might reasonably be considered proper.

It is true that no specific prayer for an attorney's fee was included in the complaint, but there was included an allegation of a definite violation of the Emergency Price Control Act, and also the usual so-called "general" prayer for "such other and further relief as to the court may seem just and proper." The case was submitted to the jury on interrogatories for a special verdict, and before judgment was entered plaintiff filed his motion for judgment "consistent with the verdict of the jury", and in such motion did request a reasonable attorney's fee. The statement of proceedings and evidence is in error in reciting that no reference to the allowance of an attorney's fee was made in the motion for rehearing. Such motion together with a memorandum filed by plaintiff in support thereof is a part of the record on appeal. In such memorandum, made a part of the motion for rehearing by direct reference, there was included a quotation from the statute providing that in such an action "the seller shall be liable for reasonable attorney's fees" etc.

We have concluded that the awarding of reasonable attorney's fees is mandatory under the provisions of section 205(e) of the Emergency Price Control Act if the plaintiff is successful, and that failure to submit proof of the value of such services is not fatal since the fixing of the amount is left to the court. Aronwald v. Sperber, 184 Misc. 314, 53 N.Y.S.2d 352; cf. Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 54 S.Ct. 133, 78 L.E. 267; People of Sioux County v. National Surety Co., 276 U.S. 238, 48 S.Ct. 239, 72 L. Ed. 547; Hilgreen v. Sherman's Cleaners & Tailors, Inc., 225 N.C. 656, 36 S.E.2d 252. We believe this is true even if request for same is not made until subsequent to the complaint. Gardiner v. Eclipse Grocery Co., 72 Mont. 540, 234 P. 490, and cases cited therein; cf. Kansas City, St. L. & C. R. Co. v. Alton R. Co., 7 Cir., 124 F.2d 780.

The judgment of the lower court is affirmed insofar as it relates to the award of $147.11 as damages for breach of warranty but is reversed insofar as the award of sanctions for overcharges and attorney's fees is concerned. A new trial is ordered on the issue of whether defendant's failure to make the repairs was willful or the failure to take reasonable precautions against the occurrence of the violation.[2] Based upon the jury verdict on this point, the trial court is directed to award such damages, not less than the overcharge nor more than three times the overcharge, as in its discretion it may determine; and to award reasonable attorney's fees to plaintiff.

Affirmed in part, reversed in part, with instructions.

---

[1] Nick Bombard, Inc., v. Proctor, D.C.Mun.App., 47 A.2d 405; Bowles v. Pechersky, D.C.W.D.Pa., 64 F.Supp. 641, and cases cited therein.

[2] Municipal Court Rule 52A(c); Ecker v. Potts, 72 App.D.C. 174, 112 F.2d 581; United Retail Cleaners & Tailors Ass'n of D. C. v. Denahan, D.C.Mun.App., 44 A.2d 69.