**UNITED STATES v. HOTH et al.**
No. 13294.

United States Court of Appeals
Ninth Circuit.
Sept. 28, 1953.

Bone, Circuit Judge, dissented.

Warren E. Burger, Asst. Atty. Gen., Samuel D. Slade, John G. Laughlin, Attorneys, Department of Justice, Washington, D. C., J. Charles Dennis, U. S. Atty., Kenneth J. Selander, Asst. U. S. Atty., Seattle, Wash., for appellant.

Raymond A. Reiser, Seattle, Wash., Donald M. Bushnell, Ferndale, Wash., for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

The United States instituted this action by filing a pleading entitled "Complaint in the Nature of a Bill of Interpleader," pursuant to § 19 of the World War Veterans' Act of 1924 and § 617 of the National Service Life Insurance Act of 1940, each as amended, 38 U.S.C.A. §§ 445, 817. The individuals impleaded were alleged to have or claim an interest in a certain policy of National Service Life Insurance issued by the United States to one John M. Donley. Three of the named defendants (apparently brothers of the insured) made no appearance, and default was entered against them. Those appearing were appellees William E. Hoth, Rose E. Hoth, and Guy F. Whitman.

The complaint alleged that Donley, while in the service of the United States Army, was granted a $10,000 contract of National Service Life Insurance in which he designated his wife, Barbara M. Donley, as sole beneficiary; that Donley died in July 1943, while in the service, and that thereafter until the death of the beneficiary, in December of 1945, the latter was paid the insurance benefits periodically accruing. The complaint then alleges that while the United States stands ready to pay all further sums due under the policy to the person or persons lawfully entitled thereto, a dispute as to the persons so entitled has arisen, and that, by reason of the conflicting claims and interests of the defendants, doubt exists as to which are entitled to receive the same. The prayer is that the defendants be cited to appear and answer and that the court determine their rights and direct payment of the insurance benefits to such person or persons as the court may determine is entitled thereto.

Inasmuch as the insured was not survived by a child or children, upon the death of the designated beneficiary, by the terms of the National Service Life Insurance Act,[1] the insurance remaining unpaid became payable to the "parent or parents of the insured who last bore that relationship, if living, in equal shares". By statutory definition the term "parent" includes "persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year, * * * *."[2]

Defendants Rose E. Hoth, a maternal aunt of the insured, and William E. Hoth, an uncle by marriage, claiming to have priority within the permissive devolutionary class of § 602(h) (3) (C) of the Act, filed claims with the Veterans Administration for the insurance as did also defendant Guy F. Whitman, the insured's stepfather. Each claimed as a person who had stood in loco parentis to the insured.[3] While nothing to this ef-

---

1. Section 602(h) (3) (C), 38 U.S.C.A. § 802(h) (3) (C).

2. Section 601(f), 38 U.S.C.A. § 801(f).

3. Three brothers of the insured, of the whole or of the half blood, also filed claims with the Veterans Administration as beneficiaries in a deferred classification, but, as indicated above, they failed to make an appearance in the suit.

fect appears in the pleadings, or otherwise in the record, the brief for the United States informs us that the Veterans Administration conducted a full field investigation in order to ascertain which, if any, of the conflicting claimants qualified as a person or persons who had stood in loco parentis to the insured for not less than one year prior to the latter's entry into the service, and who, in point of time, last bore that relationship to him. As a result of the investigation a subordinate agency of the Administration concluded that the claims of Rose E. Hoth and William E. Hoth should be allowed, and that of Guy F. Whitman denied. Whitman then appealed to the Board of Veterans Appeals which reversed the previous finding and instead allowed the claim of Whitman. Following this final administrative determination one of the Hoths gave notice of intention to institute legal action; whereupon the United States filed this suit.

In their answer to the complaint the Hoths alleged that they alone had stood in loco parentis to the insured, and that they were the last persons to stand in that position. Whitman, in his answer, alleged that he, as stepfather, had stood as a father in loco parentis to the insured from the time the latter was two years of age until his death.

The suit never reached the point of trial. From some source the suggestion seems to have emanated that the Hoths and Whitman, all three of whom apparently are elderly people, settle their differences by a compromise. According to counsel for the appellees the suggestion originated with counsel for the government. At any rate a stipulation was entered into between the Hoths on one side and Whitman on the other that all three stood in the relationship of loco parentis to the deceased and are entitled to share equally in the remaining proceeds of the policy.

The court made findings declaring the facts of the case as established by the uncontroverted allegations of the complaint, recited the compromise by the defendants of their differences and their stipulation that judgment be entered in accordance therewith, and found that Whitman and the two Hoths all stood in the position of loco parentis to the insured for a period exceeding one year prior to his death and were standing in that relationship at the time of his death, and are entitled to share equally in the proceeds of the insurance contract. Conclusions of law appropriate to such findings were made and judgment entered in conformity therewith and with the findings of fact.

In support of its appeal the United States points out that the findings, conclusions and judgment below are based, not on evidence, but upon the stipulation and compromise agreed to by the defendants. The argument is that by judicially sanctioning the settlement agreement the court has permitted the claimants to National Service Life Insurance policy benefits to determine that they qualify as beneficiaries within the limitations and as defined by the Act of Congress, all of which, it is said, runs counter to the purpose and intent of Congress as disclosed in various provisions of the Act, 38 U.S. C.A. § 801 et seq.

We shall not go into the particulars of the legal argument, since we agree with it as an abstract proposition. It is evident that the trial court—erroneously as the government here contends and as we agree—regarded the United States as occupying the position of an ordinary stakeholder, with the impleaded individuals being the only parties having an interest in the disposition of the fund. We desire merely to point out that the government appears to have invited the procedure followed, participated in it, and raised no question in the court below concerning its propriety. The record shows affirmatively that the findings, conclusions of law, and judgment were presented to the court by counsel for the government for the court's adoption. It is strongly inferable, and is not denied, that the findings and judgment were actually prepared by counsel for the government. The record

discloses no exception or objection to the findings or to the entry of the judgment predicated on them or any intimation on the part of the government that the Act inferentially precludes judgment otherwise than on the basis of evidence actually taken.[4] The United States is not entitled, any more than the ordinary litigant, to raise questions on the appeal not presented or suggested below. Nor is it entitled on appeal to take advantage of error which it has itself invited. To hold otherwise would be to encourage interminable delay.

▮ Apart from this posture of affairs it would seem that the National Service Insurance Act has not been materially outraged or the public interest thwarted by the judgment entered below. As observed earlier in the opinion, we have it on the authority of the government's brief that the Veterans Administration, after a full investigation of the facts, found that either the Hoths or Whitman were legally entitled to the unpaid proceeds of the policy, but that the question as to which should have them was so close as to lead to a division of opinion within the Administration itself. Thus we can feel confident that the trial court's judgment at least roughly approximates the Congressional policy and is not substantially out of line with the facts.

Affirmed.

BONE, Circuit Judge.

I dissent.

The "Stipulation of Compromise and Settlement" upon which the judgment of the court below was based was filed with that court on December 11, 1951. It was drafted so as to include the United States as a party thereto. The United States Attorney, however, did not sign the document. On the same day the United States presented findings of fact and conclusions of law in accordance with the stipulation. These findings and conclusions were adopted by the court and judgment entered accordingly. In the findings it was noted that the United States was not a party to the stipulation.

On December 14, 1951, the United States filed with the court below a letter pertaining to this case, dated October 5, 1951, signed by an Assistant Attorney General of the United States and directed to the United States Attorney in Seattle. I quote this letter in pertinent part:

"In the instant case the file indicates that the insured was not survived by a child or children or a natural parent. His wife survived him, but died shortly thereafter. Therefore, the question as to the person or persons entitled to the unpaid benefits depends upon who or whom in fact stood in loco parentis to the insured for the period of time required by the Act. *This is a question which must be determined by the Court upon the basis of evidence adduced before the court and not left to the parties to decide, as is proposed by the attorney for William E. Hoth.*" (Emphasis mine.)

The letter contained other statements similar in effect. I cannot agree with my associates that in the circumstances of this case the "presentation" by an Assistant United States Attorney of the findings and conclusions of law adopted by the court precludes review of the questions here sought to be raised.

It should be noted that the rule as to the saving of questions going to the sufficiency of the evidence to support the findings of a court sitting without a jury is liberal. Review of such questions may be obtained even though the party raising them requested no findings, made no objection to the findings made, and made no motion to amend such findings or a motion for judgment. See Rule 52(a) and (b), Fed.Rules of Civ.Proc., 28 U.S. C.A.; Monaghan v. Hill, 9 Cir., 140 F.

4. The letter of the Assistant Attorney General, referred to in Judge Bone's dissent, was not filed with the court below until several days after judgment was entered. Accordingly we can not assume that the communication timely apprised the court of the error committed.

2d 31, 33, 34; Stoltz v. United States, 9 Cir., 99 F.2d 283, 284. While ordinarily a party may not ask for appellate relief from matters in a judgment which were included in his own *requested* findings, the rule is by no means absolute. If there is a showing of excusable mistake, or if the mistake was brought to the attention of the trial court, the question should be noticed on appeal. Omaha Hardwood Lumber Co. v. J. H. Phipps Lumber Co., 8 Cir., 135 F.2d 3, 10.

Here the United States in its complaint prayed that the court "determine" the rights of appellants. Thereafter the United States failed and refused to be a party to the stipulation of compromise and settlement executed by the parties which was made the basis for the court's findings. What prompted the Assistant United States attorney to "present" the findings is not apparent from the record, but the findings specifically note that the United States was not a party to the stipulation. And within three days after entry of judgment, the United States filed with the court the letter referred to above, which could have had no other purpose than to apprise the court of the error committed. I think the question is properly before this Court for review.

In any event, I think this is "one of those exceptional cases where the error is so basic, plain and clear as to prompt this court to consider the question to avoid the injustice which might otherwise result." Mondshine v. Short, 5 Cir., 196 F.2d 606, 608; see also Hormel v. Helvering, 312 U.S. 552, 556–559, 61 S. Ct. 719, 85 L.Ed. 1037; Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 U.S. App.D.C. 271, 140 F.2d 13, certiorari denied 322 U.S. 755, 64 S.Ct. 1270, 88 L.Ed. 1584.

The majority recognizes the error of the court below and there is no need to labor it here. The National Service Life Insurance Act of 1940, 54 Stat. 1008 et seq., as amended, 38 U.S.C.A. § 801 et seq., is replete with provisions showing the meticulous care taken by Congress to make certain that insurance proceeds, which came in substantial part from general public funds, see §§ 604–607 of the Act, United States v. Henning, 344 U.S. 66, 71, 73 S.Ct. 114, should go to certain persons and no others. See §§ 602(g), 602(i), 602(j), 613, 614, 615 and 616, referring to 38 U.S.C.A. § 454a; United States v. Henning, supra, 344 U.S. at page 71, 73 S.Ct. 114.

When Congress amended the Act in 1942 to bring persons standing in loco parentis to the insured within the devolutionary plan for payment of the insurance benefits, §§ 7–9, 56 Stat. 659, 38 U. S.C.A. §§ 801(f), 802(g), 802(h) (3) (C), it carefully defined the term "loco parentis" and permitted payment only to those who "last bore" that relation to the insured, doubtless to preclude diversion of insurance funds to hosts of undeserving strangers. See United States v. Henning, supra, 344 U.S. at page 77, 73 S.Ct. 114.

These measures are made meaningless if, as here, claimants are to be permitted, purely by stipulation in lieu of evidence, to determine that they qualify as beneficiaries as limited and defined by Congress. See United States v. Leverett, 5 Cir., 197 F.2d 30; United States v. Snyder, 85 U.S.App.D.C. 198, 177 F.2d 44, 49. I think the purpose of Congress is ill served by allowing a judgment based solely upon such a stipulation to stand simply because of a mistake in tactics by counsel for the United States in the court below.

As the majority points out, the interest of the United States in this action and on this appeal is far more than that of an ordinary stakeholder. The United States has a vital interest in seeing that the mandate of Congress as to the disposition of the insurance funds is observed, and not left to self-serving compromise arrangements between claimants. See the Leverett and Snyder cases, supra.

Adoption of my view in this case would require but a very brief proceeding in the lower court. I agree that the delay resulting from a remand of any cause is unfortunate. "But, although prompt despatch of judicial business is

a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay." Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135.

While appellees may indeed have good faith claims to the insurance proceeds in question, it would appear that none of them was willing to gamble on proving his or her claim by an adversary proceeding in court. If in fact they each recognized the merit of the claims of the others, and deemed it just to share equally in the proceeds, nothing prevented them from agreeing in advance to later share the award of a judgment following a trial.

I would reverse and remand the cause for a trial of the question as to which, if any, of the appellees qualify to receive the insurance proceeds under the Act.