GEORGE W. KANE, Respondent, *v.* TEN EYCK CO., INC., et al., Appellants.

Judgment and order affirmed, with costs.

All concur except Hill, P. J., who dissents in memorandum, and Crapser, J., who dissents with opinion.

Hill, P. J. (dissenting). The jury has determined all issues of fact in plaintiff's favor; thus, while defendants' evidence is that there was no leak in the faucet, the opposite given by plaintiff has been accepted. The fact either way seems of small significance in determining the case.

Plaintiff's experts attributed the leak to a faulty packing in the faucet. The component parts of a faucet — handle, stem, valve and packing — collectively make the device by which the water is turned on and off. Not of much importance is plaintiff's statement that his intention was called to the dripping faucet because there was a film of moisture on the mirror which he was using in connection with shaving. It is not persuasive, in view of the fact that he had just taken a bath, and from that much greater volume of water the air had become over-saturated with moisture which was condensing on the cooler surface of the mirror. A leak in the faucet, caused by the worn packing, presented no hazard and could not harm the occupant of the room. Its only effect would have been upon the water rates paid by the hotel. However, it was reasonable that plaintiff should attempt to close the faucet which he had opened. He was not justified in applying unreasonable force to the handle, for even iron can be broken, and porcelain much easier. There was no relation between the assumed worn packing and the latent defect in the porcelain. The plaintiff says: "I noticed a flow of water, a slow flow of water and considerable amount of steam escaping from this faucet. I attempted to stop the flow. I put my hand on the hot water control naturally and attempted to stop the flow of water. I attempted to turn it. As I did the faucet handle split. The lower portion dropped into the tub. The upper portion remained on the shaft and cut my hand ". Defendants' liability does not arise because the packing, being worn, failed to furnish a proper seat for the valve. It is not claimed that defendants had notice of the hidden defect or that they had failed in any duty in selecting or inspecting the equipment. They were under no duty to exercise care to discover and repair defects unknown to them. (*Galbraith* v. *Busch*, 267 N. Y. 230, 233; *Higgins* v. *Mason*, 255 N. Y. 104.) The judgment should be reversed and the complaint dismissed.

CRAPSER, J. (dissenting). On the 21st of June, 1939, the plaintiff in this case came to the Hotel Ten Eyck in Albany and was registered and assigned to room 405. Occupying the room with him was one John Suess. In the bathroom was a tub against the wall and a washstand, and above the washstand was a mirror.

At 7:30 P. M. the plaintiff took a shower and tub bath. He used both the hot and cold water faucets in the bathtub to draw the water. After the water was in the tub he shut the water off and took his bath. After finishing his bath he clothed himself and returned to the bathroom in order to shave, and while shaving he noticed that the mirror was covered with a film of vapor, and he said he looked at the faucet in the bathtub and he said he noticed a slight flow of water and considerable steam escaping from the faucet and he went to shut off the faucet and as he was shutting off the faucet the handle split and caused the injury to his hand for which he has recovered the judgment. In addition to the plaintiff, his companion in the room was sworn, the doctor who took care of him and two experts who were plumbers.

At the close of the plaintiff's evidence the defendants moved for a nonsuit and dismissal of the complaint on the ground that the plaintiff had failed to show facts constituting a cause of action against the defendants, there being no proof whatever of negligence, no proof of notice, no proof of any defective condition whatever in the device by which the man was injured. The motion was denied.

The defendants swore one witness, Miss Caprood. She said that she had worked at the Ten Eyck Hotel eleven years and that on the 22nd day of June, the day of the accident, in the morning before the accident, she went to room 405 to inspect the room; she examined the faucets to see if they were leaking and if she had found them leaking and could not have turned them off easily she would have called a plumber. She found one of the faucets was dripping a little bit in the bathtub, it was just dripping, and she shut it off, using only the strength that she would have used in her own home. That was all of the evidence that was offered on the part of the defendants.

The defendants, at the end of the whole case, renewed their motion made at the close of the plaintiff's case for a nonsuit and dismissal of the complaint and for the direction of a verdict on the ground that from all the evidence it did not appear that the defendants were guilty of any negligence and that the plaintiff had failed to make a case. The court reserved decision upon the motions.

" The court: In submitting this to the jury is it the contention of the plaintiff that the doctrine of *res ipsa loquitur* applies, or that you have established proof that would warrant a jury in finding that there was negligence on the facts? Mr. Scully: I say that the accident itself raised an inference. The evidence produced raised a question of fact. The court: In other words, you contend that that doctrine, whatever you may call it, applies? Mr. Scully: Yes."

The plaintiff alleges in his complaint that the breaking of the faucet handle was caused solely by reason of the negligence of the defendants, their agents, servants or employees and alleges that the negligence of the defendants consisted, among other things, of leasing the premises for public use with knowledge that said premises and fixtures thereof were obsolete, inadequate, dangerous and unfit and apt to cause injury to the life or limb of a person using said fixtures.

The rule of *res ipsa loquitur* is predicated, among other things, upon the condition that the agency that had produced the injury is within the exclusive possession, control and oversight of the person charged with negligence, whence

legitimately flows the inference that if there is any explanation of the accident consistent with freedom from negligence, he should be able to give that explanation and if he does not give it the presumption arises against him. The reason for and common sense of this rule under such conditions are obvious. It frequently happens in the law that, if a person fails to explain that of which he apparently has knowledge, the presumption goes against him. (*Griffen* v. *Manice,* 166 N. Y. 188; *Slater* v. *Barnes,* 241 N. Y. 284.)

The rule does not permit in any case the assumption of negligence from the mere fact of an accident and an injury, but only in those cases where the surrounding circumstances, which are necessarily brought into view by showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The management and control of this faucet were not based exclusively in the defendants. To be sure, they owned them and rented the use of them to the plaintiff, in this case a customer of the hotel.

The defendants produced evidence that they had inspected the faucets on the very morning of the accident and found them to be in good order. This evidence is unimpeached and uncontradicted, and they have assumed that this could be a *res ipsa loquitur* case, and the plaintiff was compelled after the introduction of that evidence to go forward and prove negligence on the part of the defendants and freedom from contributory negligence on the part of the plaintiff. This he failed to do. (*Griffen* v. *Manice, supra.*)

I have examined the record and I have been wholly unable to find therein any evidence sufficient to show that the accident was the result of any negligence chargeable to the defendants. There is no proof in the case to show that the defendants would have had any reason to doubt that the faucets were adequate and perfect, and there was no degree of care on their part which required them to subject the faucets to any further tests than were customarily and usually made and which they showed they made on this occasion.

All that is left, therefore, of the plaintiff's case is that the plaintiff took hold of the faucet and exerted pressure enough to break the faucet. From that circumstance the plaintiff claims that the jury was authorized to draw the inference of negligence. There is no proof justifying such an inference, and whether or not the accident was the result of negligence must have been a mere guess. The mere fact that this faucet broke does not furnish sufficient evidence of negligence upon the part of the defendants to cast liability upon them. (*Losee* v. *Buchanan,* 51 N. Y. 476; *Reiss* v. *New York Steam Co.,* 128 N. Y. 103, 106.)

There is no proof in this case of actual or constructive notice that any defect existed. The only liability which rested upon the defendants was the exercise of reasonable foresight and reasonable care. If there was a defect in the handle there was no proof that it could have been discovered by ordinary care; ordinary use may have caused it.

The jury cannot be permitted to go upon mere conjecture. The plaintiff was bound to show affirmatively that the cause of the defect was one for which the defendants were responsible, to justify recovery. The use of these faucets throughout the hotel, without any similar accident, for many years aids strongly in determining that the jury was not justified in finding the defendants at fault. (*McGrell* v. *Buffalo Office Bldg. Co.,* 153 N. Y. 265.)

The care used by the defendants in the inspection, maintenance and repair of these faucets was all that they could be expected to observe.

The motion made by the defendants for the dismissal of the complaint at the end of the plaintiff's case should have been granted. This motion was renewed

at the end of the defendants' case and as the evidence stood then the motion should have been granted.

The judgment and order appealed from should be reversed and the complaint dismissed, with costs.