## ROWLIK v. GREENFIELD.
### Civ. No. 8936.

United States District Court
E. D. Pennsylvania.
July 14, 1949.

Elias Magil (Richter, Lord & Farage) of Philadelphia, Pa., for the plaintiff.

Howard R. Detweiler, of Philadelphia, Pa., for the defendant.

DELEHANT, District Judge.

In this action to recover damages for personal injuries consequent upon his being struck, while he was a pedestrian, by an automobile owned and being operated by the defendant, the jury, on April 13, 1949, returned a verdict for the defendant, upon which the court directed the entry of judgment. Although it is not relevant to the present issue, the court realizes, and here observes, that, in consequence of the collision, the plaintiff sustained severe, expensive and disabling injuries, some of the effects of which may well be permanent.

The plaintiff has seasonably served and filed a motion for a new trial, together with the specification of supplemental grounds for its allowance, in which (omitting certain points which are not argued and are without support in the record) three separate grounds are assigned. Those are:

1. The opposition of the verdict to the great weight of the evidence and to all the credible evidence;

2. Fundamental errors in the court's charge, not in disregard of any requested instructions or excepted to upon the trial; and

3. Newly discovered evidence.

Counsel for the respective parties have assisted the court in its study of the motion by the provision of a complete transcript of the record of the trial, and by the submission of exhaustive briefs in which they have discussed the evidence and the law which they severally conceive to be instructive and controlling on this occasion. And it is only fitting that the court should also make grateful acknowledgment of their careful and efficient service in the trial of the cause. The transcript of evidence, the pleadings in the case, and the briefs, together with the authorities cited therein have received the careful consideration of the court.

As counsel for the plaintiff indicates in his brief, the writer of this memorandum has lately had occasion closely to examine the subject of the duty of a trial judge in the federal judicial system, in the consideration of a motion for a new trial with particular reference to the contention that the verdict is against the great weight of the evidence or against all of the credible evidence. The results of that study were set down in Rice v. Union Pacific Railroad Co., D.C.Neb., 82 F.Supp. 1002, 1003, 1004 which the plaintiff cites and to the relevant portion of which reference is now made without the needless repetition of its contents. It may sufficiently be observed that the court is respectfully mindful of, and disposed to follow, the counsel upon that problem of Judge Parker in Garrison v. United States, 4 Cir., 62 F.2d 41, 42.

But in its present administration of that rule, this court can not agree with the plaintiff that the evidence upon the trial reveals such a great probative weight in his behalf that the jury's adverse appraisal of it should be rejected or overturned; or that the evidence in the defendant's behalf is shown convincingly to be incredible.

There was no such numerical superiority of witnesses in support of either party upon the issue of liability as would, of its own force, suggest or control the tenor of the jury's verdict. For the plaintiff, besides his own testimony, one Albert Verdon was a witness. The plaintiff's personal testimony supported his version of the incident but he was necessarily uncertain, and in a large measure silent, respecting the exact details of the collision between the automobile and his person, for he appears not to have observed the vehicle before the impact. Verdon, testifying as the operator of an automobile following the defendant in the course of traffic but stopped for the time by a traffic signal at the intersection East of the site of the injury, stated that he had a momentary observation of the plaintiff walking on the shoulder of the highway, but in what direction he could not tell, almost immediately before the car and he came into contact, and the defendant's vehicle proceeded off the left margin of the pavement with both of its left wheels, as he recalled. The defendant's testimony was in sharp conflict with that of the plaintiff and Verdon.

A problem in the credibility of witnesses and probative value of testimony was clearly presented to the jury. In that connection it is necessary to observe that the jury might intelligibly have regarded Verdon's testimony with considerable doubt. Several factors could have prompted it, among which may be mentioned suggestively, but not exclusively, his bearing and manner of testifying as a witness, his own position in his automobile paused before a stop light at an intersection and presumably attentive primarily to the awaited signal change which would allow him to proceed, the distance ahead of him at which the challenged event occurred, which was at least one hundred fifty feet and probably not far from two hundred feet, and the undoubted intervening visual obscurity at about 6:15 o'clock on a mid-October evening.

Other relevant testimony was directed principally, though not entirely, to the location of the stricken plaintiff on the

roadside following the injury and the location then of the defendant's car. And those matters are not compellingly significant in the plaintiff's favor. Indeed, the jury may easily have regarded the proximity of the plaintiff to the pavement as quite instructive evidence that he was on the pavement rather than on its adjacent shoulder when he was struck, for it is somewhat difficult to suppose that, if he had been struck while he was beyond the pavement by a vehicle traveling generally along the pavement's margin nearer to him, his prostrate form would have been cast as near to the pavement as it was.

■ . The court is, therefore, persuaded not only that a case was presented for submission to the jury, but also that its verdict in the defendant's favor is adequately supported by the evidence and is not contrary to its great, or manifest, weight. Nor can the court assent to the plaintiff's argument that the defendant's essential evidence upon the issue of liability is not entitled to credence by the jury. It is neither intrinsically incredible nor demonstrated by any circumstance to be unworthy of belief.

■ In the plaintiff's brief there is a suggestion of the intrusion of passion and prejudice into the jury's verdict. But there is no conceivable warrant for it. Nothing occurring upon the trial could possibly support it. It is irrational to suppose that bias was inspired in any juror by the somewhat accented speech of the plaintiff as a witness, which suggested his probable foreign birth. And a reference in that brief to the wearing down of jurors during their deliberation to coerce agreement is both wholly unsupported factually and conclusively rejected by the record which shows that, including its lunch period the jury was engaged in its final study from 11:41 a. m. to 4:00 p. m., on the same day, only four hours nineteen minutes.

The assignment of fundamental errors in the court's charge has been examined in careful detail but is not believed to be at all well taken. There was no request by either party for specific instructions to the jury. Moreover, the charge as actually imparted to the jury, of whose essential content, though not its precise verbiage, counsel were informally advised before argument, was not excepted to by either party. And the nature of the asserted "fundamental errors" (as reflected both in the motion as originally served and filed and in the specification of additional reasons) prompts the court to make notation of a matter which is not a part of the record, but will, as the court thinks, be unquestioned by counsel for either party. The basic errors are said to lie chiefly in the fact that the court did not instruct the jury upon several items of statutory or decisional Pennsylvania law on the general subject of the operation of motor vehicles within the state. Now, the writer of this memorandum, having observed in an examination of the pleadings the assignment of "violating the motor vehicle code of Pennsylvania" as a specification of negligence in paragraph 3(e) of the complaint, and being conscious of his own unfamiliarity with that code or any judicial decisions which may be pertinent to it, conferred informally before the opening of the trial with counsel for both parties. In that conference the writer directed counsels' attention to the allegation and to the immediately following specification of "Negligent at law", and to his own want of knowledge of local Pennsylvania law, and requested that if any local law, statutory or judicially erected, were relied upon by either party, counsel seasonably direct the specific legal item and its source to the court's attention. Whereupon, after a short discussion between counsel, the court was assured by each attorney, in obvious good faith on the part of both of them, that no such item would be involved. And at that time the writer, to signify the elimination of those factors, marked each of them with the character "O" in lead pencil.

■ Let it be very clearly understood that the court does not consider any of the matters noted in the last preceding paragraph as adequate to warrant the denial of the plaintiff's motion if, actually, fundamental error is to be discerned in the charge. Neither the failure of counsel

to request specific instructions nor the absence of exception to a charge, nor both in combination, will be adequate to absolve the court from the failure to charge the jury upon the essential issues in the case or from material error in the charge upon those issues. Callen v. Pennsylvania R. Co., 3 Cir., 162 F.2d 832; Dowell v. Jowers, 5 Cir., 166 F.2d 214, 2 A.L.R.2d 442; Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. This court has no inclination to support a clear and manifest perversion of justice on its own part, however innocently it may have arisen, on the ground of the inadvertence or inattention of counsel. And if such a perversion were detected, the writer would prefer personally to rectify it rather than to have it intercepted by appellate mandate. It ought promptly to be added that the court does not consider either attorney in the case to have exhibited any inadvertence or inattention. And respecting the court's informal conference with counsel, it is not a recorded part of the trial; and, even if it were, it should not be resorted to by the trial judge in excuse of a plain and vital error in his administration of the trial.

But the court has carefully considered each of the separate items of local law which counsel for the plaintiff now urge as imperative elements in any proper and adequate charge to the jury upon this case. It may be recognized that, academically, they are fair reflections of the Pennsylvania law upon the points which they cover. They are not on that account necessarily to be given in every negligence case involving the alleged use of a motor vehicle; and none of them is both pertinent and essential under the facts of this case. It is to be remembered that this action arises in rather unusual circumstances. The plaintiff claims that he was never upon the traveled portion of the highway and was struck while he was presumably beyond the hazard of vehicular traffic and well out on the highway's shoulder. And the defendant contends that, though the plaintiff was not traveling generally on the pavement, he appeared suddenly on the left side of the concrete slab,

when he was only about ten feet ahead of the defendant's automobile. Thus, a situation, factually somewhat unique, puts the case beyond the reach of the ordinary rules respecting the observation of objects standing or traveling upon a vehicular highway, and the maintenance by a driver over his car of that degree of control which will allow its stopping within the range of the driver's proper lights and vision and legally required observation. And speed as an item directly causing the injury can not, in the light of the evidence, be regarded as a controlling factor, though it is asserted in the complaint. And, of course, the question of the propriety of the rate of speed under the circumstances was submitted to the jury in the charge. The court upon full reflection considers the charge to have been essentially correct.

There remains the matter of newly discovered evidence. It consists of the statements of four boys, now in age between fourteen and sixteen years, who state that they came to the site of the injury within a very short time, probably a minute, after it had occurred and observed the position on the ground of the plaintiff and the location of, and certain facts respecting, the defendant's automobile. Three of them also mention an alleged skid mark or skid marks upon the shoulder of the road. As to the defendant's car all of them profess to have seen a concave dent in the top front end of its left front fender, and three of them to have observed that a radio aerial at the left front end of the windshield was severed at the hood.

Passing over the very important question of diligence, the court is satisfied that the jury's verdict should not be disturbed for the purpose of receiving the tendered evidence of the new witnesses.

Their version of the location of the injured plaintiff adds nothing essential to the evidence already received upon that matter. It is fairly inferable and without essential conflict, that his shoulders were somewhere between one foot and three feet southerly from the edge of the pavement and his feet slightly nearer to, and

perhaps six inches from, that edge. And the proffered testimony serves only to confirm that view. The alleged dent in the left fender of the defendant's automobile and, less directly, the breaking of the radio aerial, provided it be considered that they resulted from the vehicle's collision with the plaintiff, an inference which in the absence of contrary explanation a jury would be entitled to draw, would indicate that the contact of the plaintiff with the defendant's car occurred at the point of the left front fender as well as at the point of the projecting ventilator in the left front window. The defendant considered and testified that the latter place was the contact point of his car with the plaintiff. but the disparity is not a vital one. What actually and primarily matters is how and at what part of the highway they came together. The precise part or parts of the left side of the defendant's car which struck the plaintiff would not determine that point. And as to the asserted skid mark or skid marks, which do refer to a matter or detail not previously reflected in the record, the necessary foundation for their introduction as evidence is all but completely wanting. Skid marks on any highways, and especially on unpaved surfaces where identification and segregation are difficult and confusion easy, must be satisfactorily and convincingly related to the vehicle or vehicles which are thought to have made them. They are not thus connected here. In a sense, too, the references to the alleged skid marks are corroborative or cumulative, for the witness Verdon testified directly that he observed the defendant's car to have passed beyond the pavement and upon the shoulder. It need hardly be remarked that the location of the defendant's car at the time of the boys' observation is not essentially instructive. It might, in fact, be regarded as some support, in view of its relative nearness to the fallen plaintiff, for the view that the defendant was proceeding, as he testified, at a modest rate of speed, immediately before and at the time of the collision. Shortly stated, the court is persuaded that, so far as the "newly discovered evidence" may be regarded as admissible,

and even considering such of it as is merely cumulative, the tendered additional evidence may not be considered as adequate to support the conclusion that it would likely result in a different verdict if a new trial were granted.

While in an appropriate case a court should not be hesitant or reluctant to grant a new trial for the reception of newly discovered evidence theretofore unobtainable with due diligence, a reasonable regard should be had to the desirability of stability and finality of the trials of causes once carefully had and completed. And new trials should not be allowed simply because after the verdict the losing party has come upon some witness or information theretofore unknown to him or his attorney. Irrational indulgence in that respect would inevitably make of most trials merely experimental ventures.

The motion is being denied and overruled.