John DOUGHERTY, Appellee in No. 12678,

v.

WATERMAN STEAMSHIP CORPORATION, Appellant (Ryan Stevedoring Company, Appellee in No. 12679).

Nos. 12678, 12679.

United States Court of Appeals Third Circuit.

Argued Feb. 5, 1959.

Decided April 8, 1959.

Thomas F. Mount, Harrison G. Kildare, Philadelphia, Pa. (Rawle & Henderson, Philadelphia, Pa., on the brief), for appellant.

Martin J. Vigderman, Philadelphia, Pa. (Abraham E. Freedman, Wilfred R. Lorry, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee Dougherty.

T. E. Byrne, Jr., Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee Ryan Stevedoring Co.

Before GOODRICH and STALEY, Circuit Judges, and STEEL, District Judge.

STALEY, Circuit Judge.

These are appeals taken by the shipowner, which was both defendant and third-party plaintiff in the actions below, from judgments entered by the district court upon the jury's verdicts. The primary action was initiated by a longshoreman, Dougherty, to recover damages for personal injuries incurred while unloading appellant's ship, the S.S. Bienville, at Philadelphia on October 8, 1952. Appellant joined Dougherty's employer, the stevedoring contractor, as a third-party defendant. Upon the answer to the interrogatories propounded to the jury, the district court gave judgment for Dougherty against the appellant and for the stevedoring contractor, Ryan Stevedoring Company, in the third-party action.

Two strikingly different theories were propounded as to the cause of the accident. Dougherty contended that the accident resulted when a short hatch board gave way as he was stepping on it while engaged in covering the hatch. Appellant denied the hatch board was too short and asserted that the accident was the result of careless placing of the blind

or queen beam so that the board was insecure and tipped when it was stepped on.

Plaintiff fell into the lower hold, striking a beam on his way down. Upon his removal from the hold, he was taken to a hospital. The extent of his physical injuries attributable to the accident was hotly contested. The evidence on behalf of Dougherty tended to show severe head and back injuries of a permanent nature, while the evidence proffered by the shipowner indicated three congenital weaknesses in his lower spine of which the most serious was identified as a "spondylolisthesis" or slipping of a vertebra from its normal position. Though still wearing a back·brace, he was inducted into military service the following March 26. As a result of his disability (whether caused by the accident, the congenital weakness, or a combination of both was in dispute), he was granted a medical discharge within three months.

The extent of a mental disturbance attributable to the accident was also in issue, the plaintiff dating its inception as shortly after the accident but prior to the Army service, and the shipowner contending it developed following his discharge from the Army. In any case it was testified that he underwent treatment at Philadelphia Psychiatric Hospital for schizophrenia for about three months. He was then transferred to the psychiatric section of the Veterans Administration Hospital at Coatesville, Pennsylvania, where he remained for a further six months. He was permitted to leave Coatesville in November, 1954, his schizophrenia being in a state of remission.[1] In 1955, plaintiff returned to work as a longshoreman and was so employed sporadically during 1956 and 1957. He was married in August, 1957, shortly prior to the trial. It was apparently accepted by all parties to the action that the plaintiff has "borderline intelligence," which limitation was not connected in any way with the accident.

The verdict of the jury was in favor of the plaintiff and against the defendant shipowner. In answer to the special interrogatories, the jury found that the accident occurred as a result of the short hatch board, that there was no contributory negligence on the part of the plaintiff and that the damages were in the amount of $100,000. Accordingly, judgment was entered in favor of the plaintiff in that amount and in favor of the defendant stevedoring company in the third-party action. Defendant-shipowner filed a motion for new trial which was denied without supporting opinion.

Appellant requests that the judgments be set aside and that a new trial be granted on all issues in the original and third-party actions because of improper cross examination by the plaintiff of a medical witness, improper and prejudicial criticism by the trial court of one of appellant's witnesses, the permitted use by the jury of a ship's model that had not been formally admitted in evidence, failure to properly instruct the jury, and excessiveness of the verdict.

■■ The case took twelve days to try, and the record exceeds 1300 pages. It was undoubtedly spiritedly contested by three able counsel with little, if any, agreement on any major issue. Under such circumstances it is well for this court to heed the admonition set out in Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680, to the effect that "We must guard against the magnification on appeal of instances which were of little importance in their setting." In appraising the instances of alleged error presented by appellant, we are equally aware that prejudice may be so highly probable as a result of improper conduct of counsel that its non-existence cannot justifiably be assumed. Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; New York Central Railroad Co. v. Johnson, 1929, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706.

1. Remission is defined as "a diminution or abatement of the symptoms of a disease; also the period during which such diminu-tion occurs." Dorland, The American Illustrated Medical Dictionary (22nd ed., 1951) 1289.

The cross examination complained of by the appellant allegedly occurred when plaintiff was cross examining one of defendant's medical witnesses, Dr. A. M. Ornsteen. The interchange is fully set out in the margin.[2] It is contended by the appellant that the trial court failed to correct in the minds of the jury the prejudice resulting from the question concerning "adequate compensation" and should have granted a motion to withdraw a juror. As will be noted, the court sustained the objection to the question, which ruling we think is at least doubtful[3] in the light of the direct examination, but we need not decide that for it is quite apparent that if it were improper cross examination it was not so prejudicial as to require the withdrawal of a juror.

2. "By Mr. Byrne [counsel for third-party defendant, Ryan Stevedoring Company]:

"Q. Doctor, in your judgment could there be any connection between the fact that the lawsuit in this case was instituted on the 7th day of October, 1953, and that the plaintiff, Mr. Dougherty, about whom we are talking, was noticed to appear at the office of counsel for the Waterman Steamship Company for the purpose of giving his deposition on the 13th of November, 1953, and the fact that the outward manifestations of schizophrenia occurred between those dates? A. That fits into my generalization that every facet of experience which is of value to the individual plays a part in his thinking, the normal reaction of people who are not schizophrenic when they are confronted with something that means a lot to them for the future they are anxious, they are concerned, they worry over it, how it will turn out, and people do develop emotional and physical reaction to that period of stress, so that is an understandable human reaction.

"Now, if an individual, as this fellow is, in October, 1953, was fully aware of these values, as all people are, he inculcates that with everything else that was building up within himself in the nature of a turmoil, so it is related to it—you can't say yes or no.

"Mr. Byrne: I have nothing further.
"The Court: Finished?
"Mr. Kildare: Yes, Your Honor.
"The Court: Now, Mr. Lorry.
"Mr. Lorry: I have one question.
"The Court: One?
"Mr. Lorry: or two.
"The Court: All right.
"By Mr. Lorry:
"Q. Doctor, if he didn't know that the lawsuit was started in 1953, it would have no effect on him? A. A thing that doesn't exist cannot cause reaction?

"Q. Correct. Mr. Byrne has asked about his reaction because of litigation; if this man receives adequate compensation would it be helpful to his condition?
"Mr. Kildare: Objection.

"Mr. Byrne: Objection.
"Mr. Kildare: There is no indication here of anything of that sort, and I object.
"Mr. Lorry: I am asking the doctor.
"The Court: What do you want to ask the doctor?
"Mr. Lorry: I want to ask the doctor if—
"Mr. Kildare: I will ask the reporter to read the question—
"Mr. Byrne: It is so manifestly objectionable.
"The Court: All right, gentlemen.
"Mr. Lorry: I asked if this plaintiff received adequate compensation in this litigation, what effect would that have on his condition?
"Mr. Byrne: Objection.
"Mr. Kildare: Objection.
"The Court: Objection sustained.
"Mr. Byrne: I ask for the withdrawal of a juror—
"Mr. Lorry: I have no further questions of the doctor.
"Mr. Byrne: I ask for the withdrawal of a juror and the Court declare a mistrial on the ground of Mr. Lorry's last question. I think that it is so manifestly improper as to require it, and I make such a motion.
"The Court: All right, your motion is overruled and an exception granted.
"Mr. Kildare: I think I will have to join in that motion for the purpose of the record.
"The Court: You join in his motion?
"Mr. Kildare: Yes, sir, I join in that motion.
"The Court: Note the objection of both defendants."

3. The trial court indicated at the argument on motion for new trial that he thought his ruling in sustaining the objection was improper. The direct examination purported to show that anxiety about the law suit was a factor in the plaintiff's mental condition. The question as to the effect of "adequate compensation" upon this anxiety would appear to be well within the scope of the direct examination.

■ Appellant further contends that it was prejudiced by a motion made by plaintiff to correct the record kept in a ledger at one of the hospitals in which plaintiff received treatment. The record related to the treatment afforded plaintiff and indicated that the lacerations and sutures were on the left side of his face. Another record apparently indicated that the lacerations were on the right side of plaintiff's face, and there was additional evidence to that effect. In objecting to the motion, appellant never contended that there was any dispute as to where the lacerations and scars were. It made objection merely to the act of correcting hospital records. Following the granting of the motion, the trial court assured appellant it might argue the discrepancy to the jury. Whatever the merits of the issue, the appellant by no stretch of imagination was prejudiced to the extent that we should interfere at this juncture in the case.

■ Appellant also asserts that the trial judge committed error by the manner in which he examined and referred to its witnesses. As a result of the nature of the damages in controversy, this case involved extensive psychiatric testimony. A study of the record clearly indicates the perplexity that must have been occasioned by the mass of testimony, oftentimes contradictory. In an effort to clarify certain testimony, the trial judge questioned some of the witnesses. The trial judge in the federal court not only has the right but the duty to attempt to clarify technical testimony. In Burgman v. United States, 88 U.S. App.D.C. 184, 188 F.2d 637, certiorari denied, 1957, 342 U.S. 838, 72 S.Ct. 64, 96 L.Ed. 1347, an objection was made to the interruption by the judge of the testimony of expert witnesses:

"Appellant says the trial court erred in interrupting one of his expert psychiatrists. Five experts testified, three for the defendant and two for the prosecution. To the appellant's contention here in respect to the interruption by the judge during the testimony of this one witness, the Government in its brief replies: 'The judge intervened extensively during the questioning of each of these five witnesses.' And examination of the record shows this to have been so.

"But such intervention is not in itself error. Quite the contrary, when the issue which the jury must determine involves the technical terms and concepts of expert psychiatric testimony, a serious responsibility rests upon the trial judge to make as certain as possible that the testimony is clear and complete. Of course, primary responsibility in this regard rests upon counsel, but a sound discretion to that end rests also upon the judge. The possibility of pure jury speculation in this field is so great that the trial judge must be unusually watchful in respect to it. The criterion by which such intervention must be judged for error is the same as that used in other respects. The criterion is the impartiality of the action and attitude. The judge may not be partial in this respect any more than he may be so in any other." 188 F.2d at page 641.

A close perusal of the record fails to sustain the appellant's contention of gross bias and prejudice on the part of the trial judge. To be sure the trial judge incorrectly stated facts upon occasion; however, there were surprisingly few instances of this, and wherever an objection was raised the judge cautioned the jury that it was the trier of fact. Perfection, although it may be the lodestar for the federal judiciary, is not the standard we are to apply on appeal. See Giffin v. Ensign, 3 Cir., 1956, 234 F.2d 307; United States v. Stoehr, 3 Cir., 196 F.2d 276, 33 A.L.R.2d 836, certiorari denied, 1952, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643; Norwood v. Great American Indemnity Co., 3 Cir., 1944, 146 F.2d 797. Especially worthy of note in this regard is a conversation that took place among the principals in the case following the retirement of the

jury to deliberate but prior to its return of a verdict. After stating his objections to the charge, plaintiff's counsel asked appellant's attorney: "Do you have any bone to pick?" In reply appellant's attorney answered: "No, sir, I don't have a bone to pick with the Court, especially Your Honor, because I think you conducted the trial very well and I am entirely satisfied with it." Thereafter, he went on to set forth some specific objections to the court's charge. A thorough study of the record convinces us that the errors noted by appellant fail to sustain its allegation of prejudice.

■ In regard to the alleged failure of the trial judge to properly instruct the jury, we have been referred to a number of cases indicating that it is the duty of a federal judge to charge *sua sponte* upon the essential issues in the case. And so this court has held. Callen v. Pennsylvania Railroad Co., 3 Cir., 1947, 162 F.2d 832, affirmed, 1948, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242; Rowlik v. Greenfield, D.C.E.D.Pa., 1949, 87 F.Supp. 997, affirmed, 3 Cir., 1950, 179 F.2d 678. However that may be, they are not dispositive of this case. In the third-party action the jury was instructed to answer special interrogatories. Upon the answer to the interrogatories the judgment in the third-party action was entered. Appellant contends that the jury should have been instructed as to the law relevant to that action. Inasmuch as the jury was asked merely to determine whether the accident was caused by the short hatch board or by the misplaced queen beam, we are at a loss as to what relevancy an instruction as to the law to be applied to the facts could have. The failure to instruct on the law under these circumstances was not error. In fact, such an instruction could only serve to confuse the jury.

■ Lastly, the appellant contends that it was error for the district court to fail to grant a new trial due to the excessiveness of the verdict. It is alleged that the $100,000 verdict is so outrageous as to indicate it was a result of passion, prejudice, or confusion. It is true that there was evidence from which the jury could have found that as a result of borderline intelligence, lack of formal education, pre-existing abnormalities, little if any damage or aggravation resulting from the accident, and current employment as a longshoreman, plaintiff was only entitled to nominal damages over and above specific outlays. However, there was also evidence from which the jury could conclude that as a result of the accident this 25-year-old plaintiff suffered a spinal injury, was mentally incapacitated for over a year and was liable to relapse when under any strain, and was permanently handicapped in seeking and retaining employment. Upon these latter facts, which were undoubtedly accepted by the jury, the trial judge denied the motion for new trial. Recognizing the inherent limits to our review, we cannot say he abused his discretion. See Lebeck v. William A. Jarvis, Inc., 3 Cir., 1957, 250 F.2d 285; Brest v. Philadelphia Transp. Co., 3 Cir., 1954, 216 F.2d 331; Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825.

■ One other point has been brought to our attention that deserves mention. Plaintiff had a scale model of a portion of the ship, the S.S. Bienville, constructed which was present in the courtroom during the trial. The technician who prepared the model testified as to its construction and accuracy. It was referred to by all counsel on a number of occasions. Prior to leaving the courtroom, the foreman of the jury requested that the jury be furnished the model to aid it in its deliberations. The trial judge and the attorneys for the plaintiff and third-party defendant were of the opinion that the model had been offered in evidence and admitted. The counsel for the appellant was of the opinion that it had not been admitted in evidence and objected to its removal to the jury room. Evidently, through what appears to have been an oversight, the model had not been formally moved into evidence and admitted. However, there

appears no question that, but for the technical words, the action had been consummated. The court was certain that it was in evidence and apparently felt it met the standards for exhibits. It would be overtechnical to hold that the admission of this exhibit into the jury room was so grievous an error as to justify reversal and grant of a new trial. This is especially so in this area where the trial court has wide discretion. American Glycerin Co. v. Eason Oil Co., 10 Cir., 98 F.2d 479, certiorari denied, 1938, 305 U.S. 640, 59 S.Ct. 107, 83 L.Ed. 413.

The judgments will be affirmed.