Elizabeth **FERRARA**, Plaintiff-Appellee,

v.

**SHERATON McALPIN CORPORATION**, Defendant-Appellant.

No. 94, Docket 27460.

United States Court of Appeals Second Circuit.

Argued Oct. 30, 1962.

Decided Dec. 10, 1962.

Clark, Circuit Judge, dissented.

Theodore H. Friedman, New York City (Jacob Rassner, New York City, on the brief), for plaintiff-appellee.

Jacob L. Rothstein, Brooklyn, N. Y. (Abraham Richmond, Brooklyn, N. Y., on the brief), for defendant-appellant.

Before CLARK, FRIENDLY and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by the Sheraton Mc-Alpin Corporation, defendant below, from a judgment of $7,500 entered in favor of the plaintiff, Mrs. Elizabeth Ferrara, by the United States District Court for the Southern District of New York after a trial before Judge Cashin and a jury. Because plaintiff is a resident of Massachusetts and defendant is incorporated in New York, and because plaintiff's complaint adequately stated a claim in excess of $10,000, jurisdiction is properly founded upon 28 U.S.C.A. § 1332.

Plaintiff brought her action to recover damages for personal injuries sustained on January 26, 1958 when she slipped and fell in a bathtub while a guest in defendant's hotel. Her complaint alleged that the injuries resulted from the negligence of the defendant in permitting a "foreign and slippery substance," described at trial as a white powder having the appearance of plaster-of-paris, to accumulate and remain in the bathtub. The attempt of the plaintiff to establish defendant's negligence was based upon her own testimony and that of her two sisters, with whom she shared the hotel room.

The plaintiff testified that when she stepped into the bathtub sometime after 10 a. m., on January 26, 1958, and before she had turned on the water for a shower, "I stepped something [sic] a little pinchy"—"it was something kind of sharp" and "it stuck in the bottom of my foot" —causing her to slip and hit her head and shoulder against the side of the tub. She further testified that although she always wore her glasses because she could not see without them, she did not wear them when she went into the bathroom on the morning of the accident and had noticed nothing in the bathtub either that morning or at any time after 7 p. m., the prior evening, when she and her two sisters had registered at the hotel.

The plaintiff's sisters testified that they each had noticed a white substance in the bathtub at sometime during the prior evening, that none of them used the bathtub that evening, and that the condition of the bathtub at 10 a. m. on the day of the accident had not changed from what it was the night before. Although both sisters knew of the presence of the white substance in the bathtub, neither the plaintiff nor the hotel was at any time notified of the existence of the condition. One of the sisters testified that shortly after the accident she cleaned out the bathtub and took a shower. Both of the sisters also testified that a metal fixture, variously described as a "bracket," "plate," "iron thing," and possibly "shower pipe," was loose from the tile or plaster above the bathtub.

This testimony raised the standard question in a negligence case of whether the defendant had met its duty of exercising due care under all of the circumstances to prevent or remove the accumulation in the bathtub of the white substance which plaintiff alleged caused her to fall and be injured. In sending this question to the jury, the trial judge charged:

"On the question of notice as to the condition of the tub, that notice can either be actual or constructive notice. That is, you can infer from the testimony, from the facts as you heard them, whether or not the hotel had what we know in the law as constructive notice of this condition."

The plaintiff objected to this section of the charge on the ground that the court "never analyzed or described to this jury what constructive notice is." The defendant did not join in this objection; instead, it objected to leaving the question of constructive notice to the jury at all. Both objections were overruled. On appeal, the defendant now claims for the first time that the substance of the charge on this point was insufficient.

We are thus faced with the issues of whether the trial court's charge on constructive notice was insufficient as a matter of law and, if it was, whether this court may appropriately take cognizance

of the insufficiency when the appellant failed to make a timely objection below, "stating distinctly the matter to which he objects and the grounds of his objection," as required by Rule 51 of the Federal Rules of Civil Procedure.

We deal first with the question of the sufficiency of the charge. At the outset it is important to state that under New York law liability may not be imposed upon a defendant in a negligence case which is predicated upon a defective condition that has arisen in a building unless the defendant had notice of the defect which caused plaintiff's injuries. Sikora v. Apex Beverage Corp., 282 App. Div. 193, 122 N.Y.S.2d 64 (1953), affirmed 306 N.Y. 917, 119 N.E.2d 601 (1954); Bravado v. Murray, 257 App. Div. 271, 12 N.Y.S.2d 893 (1939), affirmed, 283 N.Y. 619, 28 N.E.2d 29 (1940); Kipp v. F. W. Woolworth & Co., 150 App.Div. 283, 134 N.Y.S. 646 (1912), appeal dismissed, 206 N.Y. 628, 99 N.E. 1109 (1912). The notice to the defendant need not be actual notice, however. A defendant may be held liable upon a finding of constructive notice when the evidence permits the conclusion that the defect "existed for such a length of time that defendant should have known of it, or was of such a nature that it must have existed for such a length of time as to give [the defendant] notice." Weingard v. Putnam Theatrical Corp., 225 App.Div. 808, 232 N.Y.S. 296 (1929). "When a defective condition has existed for such a length of time that knowledge thereof could be acquired by reasonable inspection, then such party will be held to have known what he should have known as the result of such inspection," and this finding of constructive notice becomes as binding upon the defendant as a finding of actual notice would have been. 1 Shearman & Redfield, The Law of Negligence 46–47 (rev. ed. 1941).

It is clear that at trial the plaintiff recognized that her right to recover turned in large measure upon her ability to demonstrate that the defendant had notice of the existence of the white substance in the bathtub. She did not seriously attempt to demonstrate by any direct evidence that the defendant ever had actual notice. Instead, she seems to have argued that the evidence which she presented was adequate to sustain recovery under several alternate theories. One theory seems to be that if the jury believed that the white substance was in the bathtub when plaintiff and her family entered the room, it could infer that the substance had been in the bathtub when defendant's servants were in the room earlier; recovery upon this theory arguably would be based upon an inference of actual notice. A variant of this theory would be that if the jury believed that the white substance was in the bathtub when the plaintiff entered the room, it could infer that the defendant should have known of its existence; recovery upon this theory more nearly would be based upon a finding of constructive notice. A third theory would be that even if the jury believed that the white substance was not in the bathtub when the plaintiff began occupancy of the room, and only came into existence later that evening, the defendant was nevertheless chargeable with constructive notice of its existence because under New York law hotel keepers are deemed to have control over and to know the condition of their rooms at all times, even during occupancy.[1] It was upon this third theory that plaintiff's counsel placed major reliance in his summation to the jury, made immediately before delivery of the charge.

1. In her brief, plaintiff supports this theory by reference to Kane v. Ten Eyck Co., 10 Misc.2d 398, 175 N.Y.S.2d 88 (1943), affirmed, 267 App.Div. 789, 46 N.Y.S.2d 251 (1943), affirmed, 292 N.Y. 701, 56 N.E.2d 115 (1944); Jungjohann v. Hotel Buffalo, 5 A.D.2d 496, 173 N.Y.S.2d 340 (1958); and Kane v. Jack and Betty Realty Corp., 14 A.D.2d 885, 221 N.Y.S. 2d 275 (1961). We note the fact that these decisions permitted recovery primarily upon application of the doctrine of res ipsa loquitur. In the present case, plaintiff's pre-trial memorandum stated, "Res ipsa loquitur is not relied upon," and the jury was never charged on the issue.

Moreover, the trial judge had received written requests for instructions on the issues of constructive notice from both parties. He undertook to rule upon these requests, to charge upon the issue, and to rule upon objections made by both parties to this portion of the charge.

Given all of these circumstances, the obligation of the trial judge to charge correctly was a great one. We are persuaded that he failed to meet this obligation and that the charge was insufficient and inadequate. Despite the fact that "constructive notice" is a word of art, the trial judge told the jury no more than that it could "infer from the testimony, from the facts as you heard them, whether or not the hotel had what we know in the law as constructive notice of this condition." This is hardly an explanation of a technical concept not likely to be familiar to or understood by the typical layman selected for jury duty; at minimum, it "left the applicable rule of law in a state of uncertainty," Schafer v. Norwood Equipment Corp., 277 App. Div. 933, 98 N.Y.S.2d 626, 628 (1950), and deprived the jury of the minimum guidelines necessary and appropriate for responsible decision. "Lack of essential definition is reversible error." Kocher v. Creston Transfer Co., 166 F.2d 680, 685 (3 Cir., 1948).

Having determined that the trial court committed reversible error in the delivery of the charge, we are met with the contention that defendant is precluded from raising the point on appeal because of its failure below to make a timely and precise objection in compliance with Rule 51. Such failure on the part of an appellant, however, is not an absolute bar to an appellate court's consideration of the error on its own motion, particularly "where it is apparent to the appellate court on the face of the record that a miscarriage of justice may occur because counsel has not properly protected his client by timely objection." Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 U.S.App.D.C. 271, 140 F.2d 13, 15 (1944); Montgomery v. Virginia Stage Lines, Inc., 89 U.S.App.D.C. 213, 191 F. 2d 770, 774 (1951); Dowell, Inc. v. Jowers, 166 F.2d 214, 221, 2 A.L.R.2d 442 (5 Cir., 1948); cf. Callwood v. Callwood, 233 F.2d 784, 788 (3 Cir., 1956); Rowlik v. Greenfield, 87 F.Supp. 997, 999–1000 (E.D.Pa.1949), affirmed, 179 F.2d 678 (3 Cir., 1950); Sibbach v. Wilson & Company, 312 U.S. 1, 16, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941). What the Court of Appeals for the Third Circuit said with respect to the question of liability in an analogous negligence case is applicable to the question of notice in the present case: "[It] was submitted to the jury with what was tantamount to no instructions at all. Few more fundamental errors with respect to a charge can be conceived. A holding that counsel's failure to take exception to such a procedure bound his client would, in our opinion, result in a gross miscarriage of justice." McNello v. John B. Kelly, Inc., 283 F.2d 96, 102–103 (3 Cir., 1960).

We are fully cognizant of the appropriate restraint which must inform and limit an appellate court when it exercises the power of judicial review over a judgment entered after a trial by jury. The appropriateness of such restraint is reinforced in the present case by the rationale of Rule 51, which is designed primarily to preclude an appellate court from considering alleged errors that the trial court was never given an opportunity to correct.[2] But we must

2. See 5 Moore, Federal Practice, ¶ 51.04, p. 2505 (2d ed. 1951). It should be noted, however, that in the present case an objection to the portion of the charge dealing with constructive notice was made by the plaintiff in a manner which met the standards of Rule 51 and would have allowed her to raise the issue on appeal had the verdict been for the defendant. Thus, the trial judge was apprised of the alleged error in the charge, although not by the appellant, and had the opportunity in fact to pass upon the question. Moreover, as we have pointed out above, both parties submitted written requests for instructions on the issue, the trial judge undertook to charge upon it, and both parties made objection to the charge as given.

also remain cognizant of the responsibility of an appellate court to insure that trial court judgments have been rendered in conformity with applicable rules of law. When the integrity of a trial court's judgment has been called into question by a substantial departure from those rules, an appellate court cannot put aside this responsibility merely because of the inadvertence of appellant's counsel at trial. That responsibility compels us to reverse this judgment.

Reversed and remanded.

CLARK, Circuit Judge (dissenting).

In this case my brothers take the unusual course of upsetting a jury verdict and remanding for a new trial because the charge to the jury was inadequate in a single aspect, even though the defendant had not pointed out how it was inadequate or asked for a correction at the time. The issue arises as to notice to the defendant of the condition of the tub, and the court did tell the jury that "notice can either be actual notice or constructive notice." When the two forms of notice are thus contrasted, and before lawyers' refinements have made the question difficult, the concept of constructive notice cannot be hard to grasp or be beyond the intelligence of the ordinary jury. The court went on to explain that "you can infer from the testimony, from the facts as you heard them, whether or not the hotel had what we know in the law as constructive notice of this condition." This did not in terms mention the element of time; if the judge had added some such statement as "if it had existed for such a length of time that defendant should have known of it," the charge would have been acceptable, albeit not windy. But plaintiff's two sisters had each testified—in testimony which the judge later carefully recalled to the jury—that she had observed the bad condition of the tub upon coming into the bathroom at 7 p. m., the accident happening the next day about 11 a. m. It was thus obvious that these were the facts from which the jury could infer "whether or not the hotel had what we know in the law as constructive notice of this condition." While the emphasis upon the passage of time might have been more pointed, yet the implication of a natural basis for the crucial inference is clear and the reversal as a matter of law thus an unjustifiably harsh corrective. I would affirm.